**UNITED STATES of America**
v.
**Frank Villareal RODRIGUEZ et al.**
**Crim. No. 73–H–7.**

United States District Court,
S. D. Texas,
Houston Division.
April 24, 1974.

590

Anthony J. P. Farris, U. S. Atty., Ronald J. Waska, Asst. U. S. Atty., Houston, Tex., for plaintiff.

John H. Miller, Sinton, Tex., Fred H. Dailey, Jr., Alfano & Dailey, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

Defendants Frank Villareal Rodriguez, Carlos Gomez Castillo and Teodoro Jardon Tobar were convicted in this Court on September 7, 1973, of possession with intent to distribute 376 pounds of marijuana in violation of Title 21, United States Code, Section 841(a)(1). The case is presently before the Court for consideration of the defendants' motion for a new trial.

The motion is premised upon several allegations of error. The defendants claim that:

1. the indictment should have been dismissed due to the failure of the Court to try the defendants, who have been released upon bail, within 90 days of arraignment;

2. Government Exhibits 2 and 3 should have been suppressed as the fruits of an unlawful search and seizure;

3. the defendants' Motion in Bar should have been granted as the defendants were twice placed in jeopardy due to the refusal of the Court to require further jury deliberations after the jury indicated it could not reach a verdict;

4. the defendants should have been awarded a Judgment of Acquittal upon the failure of the Government to establish a chain of custody with regard to Exhibit No. 3;

5. the Court erred in instructing the jury that it could infer from the quantity involved that the defendants possessed the controlled substance in question with the intent to distribute it;

6. the verdict, with regard to each individual defendant, was not supported by substantial evidence.

Defendants' first contention is without merit. Immediately prior to trial, defendants moved to dismiss the indictment pursuant to Rule 48(b), Fed.R. Crim.P., averring that the length of time between their arraignment on February 12, 1973, and their trial setting on July 9, 1973, was prejudicial. They claim now that the indictment should be dismissed as it did not follow the guidelines set forth by the Plan for Achieving Prompt Disposition of Criminal Cases in the United States District Court for the Southern District of Texas.

A consideration of the law and facts indicates that the defendants are not entitled to relief pursuant to Rule 48(b), Fed.R.Crim.P., or the Plan adopt-

ed by this District pursuant to Rule 50 (b), Fed.R.Crim.P. Rule 48(b) provides for dismissal whenever there is unnecessary delay in bringing a defendant to trial. It cannot be said in this instance that the length of time between the indictment and trial justifies such a dismissal. The defendants have not been denied their Sixth Amendment right to a speedy trial. Here, the length of delay was not presumptively prejudicial; the delay was occasioned solely by the extremely congested docket of this Court; the defendants failed, prior to the trial date, to request an earlier trial; the defendants have shown no prejudice accruing from the delay, such as the loss of vital witnesses. *See* Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972).

■ The Plan for the United States District Court for the Southern District of Texas for Achieving Prompt Disposition of Criminal Cases provides that trial shall commence within 90 days after a plea of not guilty if the defendant is not in custody. In this instance, the case was called for trial 150 days after the defendants entered pleas of not guilty, with trial commencing 21 days thereafter. The delay was not the fault of the prosecutor or the defense attorneys; rather, it was the result of the unavoidably congested docket of the Court. Provision for such a delay is contained in the Plan, which provides for a continuance for "any period of delay occasioned by exceptional circumstances".

■ In their second allegation, defendants challenge the denial by the Court of their motion to suppress, claiming that the Court's application of the "plain view" doctrine was erroneous. A review of the transcript of the suppression hearing convinces this Court that its original decision to deny the motion to suppress was based upon insubstantial evidence presented at the evidentiary hearing. To support its contention that the evidence was legally seized, the Government offered only the testimony of one of the agents involved in the arrest and seizure. The agent testified that he proceeded to the Jimenez home as the result of a telephone call from a known informer. However, testimony regarding the contents of this conversation was stricken by the Court upon the objection of the defendants that it was hearsay. Later, the agent testified that the decision to enter the house was based upon a conversation with the informer who had consulted with him immediately upon leaving the residence. The contents of this conversation were likewise stricken by the Court upon the defendants' objection. It is the opinion of this Court that the mere testimony of the Government agent that he held a conversation with a reliable informer without evidence of the details of that conversation is insufficient to prove probable cause or exigent circumstances. *See, e. g.,* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The details of these conversations upon which the agents relied in entering the house must be presented to the Court to enable it to determine if the agents did in fact have probable cause.

■■ However, it is also the opinion of this Court that the hearsay testimony of the agent, which was necessary to show probable cause, was excluded improperly. While hearsay is usually inadmissible in proving guilt, it is admissible to prove probable cause. Draper v. United States, 358 U.S. 307, 311–312, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *see* United States v. Rodgers, 442 F.2d 902 (5th Cir. 1971). *See also* McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Thus, the evidence of the informer's conversation with the Government agents, which was later admitted in the trial of this matter as the direct testimony of the informer himself, should have been available to the Court in determining the admissibility of the seized evidence.

■ The Court finds itself faced, therefore, with a unique procedural question of whether to grant a new evidentiary hearing, to grant a new eviden-

tiary hearing and a new trial, or to reconsider the motion to suppress based upon the excluded evidence that was presented later at the trial. If the testimony that was improperly excluded was not otherwise available to the Court, the inclination would be to pursue one of the former courses of action. However, because the contents of the conversation were presented to the Court through the testimony of the informer himself while under oath and subject to cross-examination during the trial of this matter, this Court believes that to require a new hearing or trial would be a waste of time and energy and an unnecessary inconvenience to the defendants, counsel and the Court. Therefore, the Court will reconsider the motion to suppress based upon the evidence presented at the trial.

■ The agents, at the time of their initial entry, had probable cause to arrest the defendants based upon the information given by the informer at the scene. At the trial, Michael Bethaney, an informer working with government agents, testified that on the evening of the defendants' arrest he had been contacted regarding the purchase of a large quantity of marijuana. Testimony indicated that he then met with the officers, informed them that a sale was to take place imminently and led them to the house of defendant Jimenez. Agents Chadwick and Garrison testified that they observed the informant enter the house, remain for approximately 20 to 30 minutes and then depart to consult with the agents. Bethaney then informed the agents of the number of people in the house, the number of pounds of marijuana involved and the fact that a sale and possible removal of the contraband was to take place imminently. Because the agents in this case knew that the informer had obtained his information from personal observation, and because he related his observations of the circumstances within the house with specificity, they were justified in inferring that his information was reliable and using it as grounds for determining probable cause. *See* Aguilar v. Texas,

*supra*; United States v. Squella-Avendano, 447 F.2d 575, 580 (5th Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L. Ed.2d 369 (1971).

■ The Court's inquiry must then focus upon whether the circumstances were of such exigency as to warrant the agents forcibly entering the residence in order to effectuate that arrest. The circumstances under which a warrantless, forcible entry into a residence at night for the purpose of arresting an occupant will be valid have been carefully considered and delineated in Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 392 (1970): the offense involved is a grave one; there was a clear showing of probable cause that the suspects committed the crime involved and that they still occupied the premises; there was a strong likelihood of escape; the seeming flight of the suspects upon the announcement of the agents' identity justified the forcible entry. *See* United States v. Mapp, 476 F.2d 67, 74 (2d Cir. 1973); United States v. Wylie, 149 U.S.App.D.C. 283, 462 F.2d 1178, 1183 (1972); United States v. Davis, 461 F.2d 1026 (3d Cir. 1972); United States v. Titus, 445 F.2d 577 (2d Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971); Kleinbart v. United States, 142 U.S. App.D.C. 1, 439 F.2d 511 (1970); Vance v. North Carolina, 432 F.2d 984 (4th Cir. 1970). *See also* United States v. Squella-Avendano, *supra*.

In their decision to enter the premises, the two federal agents at the scene were faced with a number of circumstances that justified immediate action. They had been informed of the imminent sale and removal of the contraband. The hour was late, and the agents testified that they were unable to get further assistance from other agents. After brief attempts to determine their proximity to the residence of a magistrate, the agents decided that time would not allow their departure from the scene. Had one of the agents been dispatched to procure a search warrant, only one would have been available to impede any escape or removal of the

contraband. The suspects and the contraband were located within a building that had several exits, and there were several vehicles present that one or more of the defendants could have used in effecting their escape. The departure of one vehicle between the time that the informer left the premises and the time that the agents subsequently entered the house made it impossible to know the number of occupants that remained in the house. Admittedly, the agents could have delayed any action until one or more of the suspects attempted to leave the residence. However, given the number of agents, which had increased to three by the time of the entry, and the distinct probability that the house contained from one to five suspects after the departure of one vehicle, it would have been impossible for the agents to have apprehended without detection those leaving the house and thereafter to have prevented the escape of the remaining parties involved. Under these circumstances, it would have been unrealistic to expect the agents to stand idly by and conceivably permit any number of the suspects to escape.

 Once the agents had entered the house, they were justified in entering the adjoining garage and seizing the 350 pounds of marijuana that were used as evidence in the trial. A search warrant is unnecessary if evidence seized is within the plain view of an officer who is present in a place where he has a right to be. *See* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In this instance, the contraband was within the plain view of the officers in the garage who were conducting a search of the premises for persons who might be hiding therein. *See* United States v. Looney, 481 F.2d 31 (5th Cir. 1973); United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1970); United States v. Briddle, 436 F.2d 4 (8th Cir. 1970). It was reasonable for the agents in these circumstances to perform a cursory search of the house following the detention of the defendants. The fact that the three defendants were

found in various other parts of the house made even more logical the assumption that others could have been concealed in the garage adjoining the kitchen. Although agents knew from the informer that the contraband was in the garage and may have entered to look for evidence as well as suspects, this did not preclude their entry as a part of the security search. The fact that an officer performs a legitimate as well as an illegitimate function in entering a room does not make his search unreasonable. United States v. Lee, 308 F.2d 715, 717 (4th Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717 (1963). It would be unreasonable indeed to expect agents who had performed a cursory and legitimate search of the entire building to avoid the adjoining garage. Further, testimony at the hearing indicated that no actual search of the house was performed. As long as there is no proof that a general search of the premises was conducted, evidence seized within in plain view of an officer engaged in a security check is admissible. United States v. Johnson, 147 U.S.App.D.C. 31, 452 F.2d 1363, 1372 (1971); Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 394 (1970).

Although the Court recognizes that its original decision to deny the motion to supress was based upon insufficient evidence, a reconsideration of the motion indicates that the evidence sought to be suppressed was not illegally seized. Consequently, its admission as evidence was not error. Defendants' motion for a new trial based upon the Court's ruling on the motion to suppress is denied.

 Defendants' third allegation that the Court erred in not granting their motion in bar is equally without merit. The motion was based upon the Court's refusal to require that the jury continue to deliberate in the first trial of this matter after it had indicated that it was hopelessly deadlocked. The discharge of a jury pursuant to their announcement of a failure to agree is within the discretion of the Court. *See, e. g.,* United States v. Perez, 9 Wheat.

579, 22 U.S. 579, 6 L.Ed. 165 (1824); United States v. Delaughter, 453 F.2d 908 (5th Cir. 1972); Grogan v. United States, 394 F.2d 287 (5th Cir. 1967), cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968). The length of time that a jury deliberates is also a matter within the discretion of a trial judge. United States v. Caracci, 446 F.2d 173 (5th Cir. 1971); Kowalsky v. United States, 290 F.2d 161 (5th Cir.), cert. denied, 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961). In view of the certainty exhibited by the jury foreman, when questioned by the Court, that a verdict could not be reached, it cannot be said that the refusal to permit continued deliberation constituted an abuse of discretion.

■■■ Defendants allege that the Court erred in denying the motion for judgment of acquittal because the Government had not sufficiently established the chain of custody with regard to Exhibit No. 3. The allegation is completely without merit. The evidence presented at the trial with regard to Exhibit No. 3 identified the exhibit and proved that it was in substantially the same condition when it was confiscated. The evidence presented was sufficient to raise for jury consideration the question of whether the exhibit was actually involved in the perpetration of a crime.

■■■ Defendants challenge the jury instruction whereby the Court charged that the amount of marijuana involved in the case would be sufficient evidence of intent to distribute.[1] There can be no question but that the amount of marijuana involved in this instance would be sufficient for a jury to infer that it was possessed with intent to distribute. See United States v. Anderson, 468 F.2d 1280, 1283 (10th Cir. 1972). See also United States v. Henry, 468 F.2d 892 (10th Cir. 1972); United States v. Mather, 465 F.2d 1035 (5th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972); United States v. Smith, 462 F.2d 456 (8th Cir. 1972); United States v. Echols, 348 F.Supp. 745 (E.D.Mo.1972), aff'd, 477 F.2d 37 (8th Cir. 1973). Furthermore, the particular charge used did not take the ultimate decision from the jury. The Court did not instruct the jurors that they had to find from the quantity involved that the possessors intended to distribute it, but only that the quantity involved would be sufficient evidence of such an intention if the jury saw "fit to give it that much consideration". In federal court, a judge is entitled to comment upon the weight of the evidence so long as the ultimate decision regarding guilt or innocence is left to the jury. Murdock v. United States, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); United States v. Jacquillon, 469 F.2d 380, 387 (5th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973); Thurmond v. United States, 377 F.2d 448, 451 (5th Cir. 1967). If the challenged instruction at any point raised in any juror's mind a question as to whether the jury was the ultimate finder of fact, this doubt was amply dispelled by the Court's pointed and somewhat lengthy instruction that the jury could disregard any comment made by the Court with regard to the evidence or the credibility of the witnesses.[2] In

---

1. You will notice that the indictment charges the defendants did possess with intent to distribute. You are charged that with respect to the requirement of the indictment and the statute that the possession of the marihuana is with intent to distribute, that the quantity of marihuana alone in this case, 376 pounds, would be sufficient evidence of defendants' intention to distribute it or pass it along to others, if you see fit to give it that much consideration.

2. I should tell you, too, that in this Court the Judge is permitted, if he elects to do so, to comment upon the evidence. By that I mean that I am permitted to tell you what I think about the credibility of the witnesses or what I think about the facts of the case, or even to tell you what verdict I think you should return.

I have no expectation of doing this. But I instruct you if from anything I say here you draw some conclusion or inference as to my own feelings about the facts, or about the credibility of the witnesses, I do not intend it in an effort to tell you or to direct you as to what your verdict should be. Anything I

that instruction, the judge also reminded the jury that findings of fact were their exclusive province.

The defendants allege that the verdict with respect to each was not supported by substantial evidence. A review of the trial transcript indicates that this allegation is entirely without merit.

Accordingly, defendants' motion for a new trial is denied. Clerk will notify counsel.

say to you is intended only to be of some help to you in your consideration of the facts of the case, and you are entirely justified in disregarding anything I say about the facts or the credibility of the witnesses.

The finding of fact is your exclusive province and I have no desire to trespass upon it. The law of the case you will take from the Court's Charge and be governed thereby. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law. Regardless of any opinion you may have as what the law ought to be, it would be a violation of your sworn duty to base a verdict on any other view of the law other than that given in the instructions of the Court.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the indictment and the denial made by the "not guilty" pleas of the accused. You are to perform this duty without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. The accused and the public expect that you will carefully and impartially consider all the evidence, follow the law as stated by the Court and reach a just verdict, regardless of the consequences.