**David Castro ORDUNEZ, Petitioner,**

v.

**Woodrow W. BEAN, II, Presiding Judge, 243rd District Court of El Paso County, Texas, Respondent.**

No. 60322.

Court of Criminal Appeals of Texas.

April 18, 1979.

C. R. Kit Bramblett, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Paul J. Kubinksi, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

This is an original action brought by David Castro Ordunez seeking a writ of mandamus directing the Honorable Woodrow W. Bean, II, Judge of the 243rd Judicial District Court of El Paso County, Texas, to vacate his order of November 20, 1978, in Cause No. 30,620. In this order respondent refused to set aside the indictment for felony theft currently pending against the petitioner.

On November 15, 1978, petitioner filed a motion to set aside the indictment on the grounds that the State had failed to comply with the requirements of the Speedy Trial Act. The petitioner alleged that he had not been "given a trial within 120 days from the commencement of [the] criminal action against" him. See Chapter 32A, V.A.C.C.P. On November 20, 1978, a hearing was held in the respondent's court on petitioner's motion. Evidence was offered as to the sequence of events in this cause and the congested condition of the criminal dockets in the district courts of El Paso County. At the conclusion of the hearing, the trial court overruled petitioner's motion. At the specific request of the petitioner, his trial was stayed by the district court pending the disposition of this application for writ of mandamus.

The respondent made the following findings of fact:

"1. The Defendant, David Castro Ordunez was arrested on December 12, 1976.

"2. The Defendant was charged on December 12th, 1976 with theft over $200.00.

"3. The Defendant was indicted on January 20th, 1977, for the offense of theft over $200.00.

"4. The Defendant was arraigned on February 17, 1977.

"5. The Defendant pled not guilty.

"6. The case was set down for trial on May 2nd, 1977 but was not tried and was passed over.

"7. The Defendant David Castro Ordunez did not ask for nor did he receive a continuance.

"8. The case was set down for trial a second time for November 20th, 1978.

"9. The District Attorney filed announcements of ready on this case on June 30th, 1978, and again on July 3rd, 1978 as he did in all 1,200 cases which were pending in El Paso County at that time.

"10. Said notices did not go out to the Defendant or to his attorney.

"11. The District Attorney never announced ready before an assembled jury panel in this case.

"12. There are ten (10) District Courts in El Paso County, Texas."

The respondent also made the following conclusions of law:

"* * *

"The Court finds that exception number ten (10) of Section 4 of the Speedy Trial Act is applicable in the case at Bar because the Criminal Docket in El Paso County is highly over crowded."

Construing the amendment to Art. 5, Sec. 5, of the Texas Constitution, effective January 1, 1978, this Court in *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978), found: The purpose of this amendment was to confer upon this Court additional powers to grant extraordinary writs in cases regarding criminal matters.

Article 32A.02, V.A.C.C.P. (effective July 1, 1978), provides in pertinent part:

"Sec. 1. A court shall grant a motion to set aside an indictment, . . . if the state is not ready for trial within:

"(1) 120 days of the commencement of the criminal action if the defendant is accused of a felony;

\* \* \* \* \* \*

"Sec. 2. (a) . . . [A] criminal action commences for purposes of this article when an indictment, . . . against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested."

In *Wade v. State*, 572 S.W.2d 533 (Tex.Cr. App.1978), this Court held that the time limits prescribed by Art. 32A.02, V.A.C.C.P., began to run on July 1, 1978, for all criminal cases then pending on the trial court's docket. It is clear from the record before us that at the time the petitioner filed his motion to set aside the indictment more than 120 days had elapsed since July 1, 1978, and that the petitioner had not yet been tried.

Article 32A.02, Sec. 4, V.A.C.C.P. (effective July 1, 1978), provides in pertinent part as follows:

"In computing the time by which the state must be ready for trial, the following periods shall be excluded:

\* \* \* \* \* \*

"(10) Any other reasonable period of delay that is justified by exceptional circumstances."

Under the provisions of Art. 32A.02, Sec. 4(10), supra, the respondent was required to determine if the overcrowded dockets were an "exceptional circumstance" within the contemplation of Sec. 10. Under our holding in *Wade v. State*, supra, the respondent would have properly considered the question of congestion only from July 1, 1978, to the date of the hearing. It was necessary for respondent to determine whether this congestion was such a temporary situation

as to be an "exceptional circumstance" or whether in all probability this situation would continue and thus constitute the norm. The trial court's finding that overcrowded dockets are an "exceptional circumstance" is necessarily a judicial determination rather than a ministerial act.

■ In *State ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978), this Court adopted the traditional two-step test which a petitioner must meet in order to obtain relief by writ of mandamus. See 37 Tex. Jur.2d, Mandamus, Sec. 48. The petitioner must first demonstrate that no other adequate remedy at law is available. In *State ex rel. Vance v. Routt*, supra, we held that where the State had no right to appeal from a final judgment in a bond forfeiture proceeding, it had "no other adequate remedy to challenge the actions of the trial court."

■ The second limitation on this Court's mandamus jurisdiction set out in *State ex rel. Vance v. Routt*, supra, is that mandamus is not available to compel a discretionary as distinguished from a ministerial act. This Court stated:

"The writ may issue in some instances to compel the entry of a judgment, but it will not be issued to compel the entry of a specified type of judgment . . . [unless] . . . that judgment is the only proper one that can be rendered in the circumstances . . . ."

This Court concluded that:

"For the petitioner to prevail in this application for writ of mandamus he must demonstrate both that there was only one proper judgment that could be entered and that the entry of the judgment based upon the facts found by the court was in essence a mere ministerial act. See e. g., *State ex rel. Pettit v. Thurmond*, supra [516 S.W.2d 119 (Tex.1974)]."

■ In the instant case, it is clear that petitioner has failed to meet either of the tests. Appeal is available to the petitioner

in the event of his conviction to test any asserted denial of his right to a speedy trial, both on a statutory and constitutional basis. See and compare Chapter 32A, V.A.C.C.P., with *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), it was held that a defendant may not take an interlocutory appeal from a federal district court's pretrial order denying a motion to dismiss because of an alleged violation of his right to a speedy trial. The Supreme Court in *MacDonald* stated:

"Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely those values manifested in the Speedy Trial Clause."

Petitioner has also failed the second test of *State ex rel. Vance v. Routt,* supra, in that for the reasons set out above the trial court's finding of a statutory exception necessarily involves an exercise of judicial discretion.

Petitioner's application for writ of mandamus is denied.

ROBERTS, J., dissents.

PHILLIPS, Judge, concurring and dissenting.

I concur in the denial of this application for a Writ of Mandamus against the trial judge in this cause. Although I have serious reservations whether a pro forma paper announcement of ready by the State is sufficient to satisfy the requirement of Article 32A.02, V.A.C.C.P, the record before us supports the State's contention that it was ready.

Besides the two announcements of ready, the record shows that an examining trial had been held on January 6, 1977, wherein the State successfully shouldered its burden of showing a magistrate that there is sufficient evidence that the accusation is probably true (probable cause) and the accused

should be committed. See Chapter 16, V.A. C.C.P. There is also an application for subpoenas by the State for six witnesses to appear in court on May 2, 1977—the first trial setting. Finally, the Assistant District Attorney called by petitioner testified that the State was indeed ready for trial in all 1200 causes wherein announcements of ready were filed.

The petition for mandamus relief should be denied on its merits and its lack of evidentiary support.

I dissent to the discussion and conclusion reached on whether this case presents a proper mandamus cause.

With respect to whether there exists an adequate alternative remedy at law, the majority indicates that traditional appellate process embodies such. However, an appeal necessarily requires a trial of the charges as a condition precedent. The whole purpose of the Speedy Trial Act (Chapter 32A, V.A. C.C.P.) is to remedy inexcusable delays with a dismissal of the charges with prejudice. See Article 32A.02, Sections 1(1) and 2(a), (c), supra. Thus, any remedy accorded one deprived of the rights created under Chapter 32A, supra, is too little, too late, and therefore an inadequate alternative remedy. See 37 Tex.Jur.2d, Mandamus, Section 14.

The majority also declines to recognize this petition as sufficient for mandamus consideration because it decides any trial court conclusion that the facts have shown that an exception under Section 4 of Article 32A.02, supra, exists is a *discretionary,* as opposed to ministerial, action. First, such treatment of findings in cases of extraordinary writ applications is in itself extraordinary. Ordinarily, the findings and conclusions of the trial courts in such proceedings are considered, but have never been binding on this Court. *Ex parte Hagans,* Tex.Cr. App., 558 S.W.2d 457; *Ex parte Williams,* Tex.Cr.App., 561 S.W.2d 1.

Second, even should we embrace such a characterization of the trial court's eviden-

tiary role in extraordinary writ proceedings, mandamus should be available to protect our citizenry from any abuse of such "discretion." 37 Tex.Jur.2d, Mandamus, Section 22. If the evidence in the record did not support the trial judge's ruling, as I believe it did, entry of an order denying the Motion to Dismiss would be an abuse of discretion. This position is supported by the clear mandatory language of the statute. 37 Tex.Jur.2d, Mandamus, Sections 3, 6, 15, and 16; *Mora v. Ferguson,* 145 Tex. 498, 199 S.W.2d 759 (1947).

The rule denying mandamus with respect to matters of a discretionary character is not without limitation, and the writ may issue in a proper case to correct a clear abuse of discretion. When all of the facts and circumstances of a case unquestionably require a court to exercise a discretionary power to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, there is no room for the exercise of discretion.

37 Tex.Jur.2d, Mandamus, Section 46, p. 672.

Besides support for the validity of the State's announcement of ready, there was other evidence indicating an effort on the part of the El Paso County district courts to effectuate the Speedy Trial Act.[1]

I dissent to what I perceive as unnecessarily broad pronouncements concerning the general availability of mandamus and alternative legal relief in this type of cause. I concur, however, in the denial of relief here.

CLINTON, Judge, concurring.

The Texas Speedy Trial Act deprives prosecuting attorneys of their right to exercise judgment and discretion in performing their exclusive prosecutorial functions. It also trenches upon power and authority of state trial courts to manage their affairs, including control of their dockets as in *Moore v. State,* 94 Tex.Cr.R. 489, 251 S.W. 1086 (Tex.Cr.App.1923) and Art. 33.08, V.A. C.C.P. The Act is therefore subject to an attack that its effects violate the separation of powers provisions of Article II of the Constitution of the State of Texas.

The Court, however, not being pressed in this cause to consider constitutional assaults on the act, practically puts a future opportunity to do so out of reach. Thus, a defendant is said to have an adequate remedy at law through appeal—yet one who is protesting that he was denied a speedy trial under the act is not likely to claim that it is unconstitutional—and if mandamus will lie solely to compel rendition of the "only one proper judgment" that must follow from facts found by the trial court, *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr. App.1978), presumably we must await the day a trial court grants a motion to dismiss on its finding that the State was not ready

---

1. There are 10 district courts in El Paso County. See Articles 199 (34, 41, 65), (120) and (171); 199a, Sections 3.006, 3.032, 3.038, 3.068; 1926a, Section 2.28; V.A.C.S. The "Official District Court Monthly Report" to the Texas Judicial Council for July through October shows the following criminal and civil dispositions, respectively:

July — 68 and 663,

August — 98 and 610,

September — 72 and 555, and

October — 92 and 534.

This unscientific survey reflects an upward trend in felony case dispositions and a reduction trend in civil case dispositions. Defense Exhibit 1, the minutes for the October 27, 1978, meeting of El Paso County District Judges reflects affirmative steps authorized to be taken to distribute the criminal caseload among all 10 district courts. Also, the district courts have implemented a "running" docket whereby docketed cases remain so until called for actual trial. This is in contrast to prior procedure whereby if not called, a cause would be dropped from the docket and reset, as in petitioner's case. Whether this evidence shows compliance with the mandate on priorities found in Article 32A.01, supra, is a question not before us. It does, however, remove the trial court's conclusion that the facts show a Section 4(10) exception from the realm of an arbitrary and capricious discharge of judicial responsibility, i. e., an abuse of discretion.

for trial and the State comes to this Court contending the only proper judgment was to deny the motion because the act is unconstitutional. But the opinion of the Court today reduces even further the likelihood of that event.

If we are not to address the constitutionality of the Texas Speedy Trial Act, this Court must at least adhere more closely to its terms, rather than expand contingencies for avoiding them, to the end that affected and interested parties will come to realize that, as written, the act is not the effective piece of equipment it was touted to be. By holding, as I believe the Court should, that the key to operation of the act is whether the State is "ready for trial" within the applicable prescribed time period, we anticipate the day the State asserts that the legislative effort to dictate its readiness is unconstitutional.

After a hearing on the motion to set aside indictment and based upon the testimony and documentary evidence admitted, the respondent made findings of fact set out in the opinion of the Court. Upon the findings of fact and his interpretation of the act, the respondent made two related conclusions of law:[1]

"1. The term 'state' as used in Chapter 32A of the Speedy Trial Act includes the Court as well as the District Attorney's Office.

2. The Court finds that exception number ten (10) of Section 4 of the Speedy Trial Act is applicable in the case at Bar because the Criminal Docket in El Paso County is highly over crowded."

From the two conclusions of law, that respondent made a judicial determination is patent. For reasons about to be stated, however, I believe that both conclusions are

erroneous and, therefore, do not support the order denying motion to dismiss the indictment.

Confronted with a question of statutory interpretation and construction, this Court —indeed, any court—seeks to ascertain the legislative intent and purpose and, perforce, the meaning of its words, terms, phrases, clauses and other segments of the act under consideration. When the act is, in turn, drawn from or modeled after a prior writing that is similar in objective and language, our task may be accomplished more easily and more certainly. Moreover, present understanding is often aided by appreciation of historical developments concerning the matter at hand. To such extrinsic materials I now turn for examination.

In criminal prosecutions the "right" of an accused to a speedy public trial is constitutionally provided by the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of Texas. It may also be said that the same "right" in civil cases is contemplated by the Due Process Clause of the Fifth Amendment to the Constitution of the United States and the Due Course Provision of Article I, Section 19 of the Constitution of Texas. Merely stating the guarantee, however, did not effectuate it. When delay in trial of cases, especially criminal prosecutions, became so intolerable, demands for remedial action came from many quarters. Response with respect to trials of civil cases is not particularly germane here, so I pretermit any further exploration of that area, remarking only that efforts to solve the problem of denying justice by delaying it are still underway. As to our immediate concern, movement of criminal trials, studies were made, remedial plans proposed and, ultimately in the federal system, congressional action was taken.[2]

---

1. The opinion of the Court *omits* Conclusion of Law No. 1 and thereby fails to reveal the essence of his theory by which respondent arrived at Conclusion of Law No. 2. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated).

2. For a comprehensive examination of historical developments in the federal system, with emphasis in the Second Circuit, see generally *United States v. Salzmann*, 417 F.Supp. 1139, 1146 ff. (E.D.N.Y.1976).

To the claim of a criminally accused for a speedy trial—more accurately, being relieved of facing trial at all because of delay—the response of the Supreme Court of the United States came in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There the court abandoned its case by case approach and pronounced a formulation by which four stated factors were to be weighed in deciding whether the right to speedy trial had been violated. Rejecting the suggestion that specified time periods be provided, the court conceded that its doing so would simplify determination of the issue by lower courts, yet insisted:

"But such a result would require this Court to engage in legislative or rule making activity, rather than in the adjudicative process to which we should confine our efforts." *Id.* 407 U.S. at 523, 92 S.Ct. at 2188.

Nevertheless, lower federal courts in several circuits had already engaged in that activity and, when mandated by Rule 50(b) of the Federal Rules of Criminal Procedure to do so in 1973, each federal district court began to "prepare a plan for the prompt disposition of criminal cases.[3]" On the congressional front, the Speedy Trial Act of 1974 was enacted, 18 U.S.C.A. § 3161 *et seq.*

More than a right constitutionally afforded an accused, the notion that criminal prosecutions be tried speedily is in the public interest, the rationale being that prompt disposition of pending cases and swift punishment imposed on the guilty serve to protect the citizenry. In Texas the courts more or less shared the federal experience in the absence of authoritative guidelines or mandates. Then, in 1977, the Governor called upon the Legislature for passage of a speedy trial act. The result was Chapter 32A, V.A.C.C.P. to become effective July 1, 1978, more than a year after its approval.[4]

Since they were already in place, if the Legislature used as a pattern one of the plans, models or acts in the federal system, a determination of meaning of the State terms is aided by extant constructions of the federal pattern.

As already noted, the key to the time limitations prescribed by Article 32A.02, V.A.C.C.P., is whether "the state" is "ready for trial" within a scheduled period of days from commencement of a criminal action. Similarly, some federal circuits' and the Rule 50(b) plans require that "the government must be ready for trial" within prescribed periods, *U. S. v. Salzmann,* supra, 417 F.Supp. at 1152. On the other hand, some Rule 50(b) plans and the Federal Speedy Trial Act of 1974 are based on the concept that "trial shall commence" within scheduled times. See *United States v. Rodriguez,* 375 F.Supp. 589 (S.D.Tex.1974) and *United States v. Strand,* 566 F.2d 530 (5 Cir. 1978). When the former referred to "the government" they meant the United States Attorney or other federal prosecutor—not the entire government of the United States as envisaged by its Constitution. Likewise, when the Texas Speedy Trial Act refers to "the state" it means the affected district attorney or other prosecuting attorney—not the State of Texas and its several departments as created by its Constitution.

The provisions of the act itself, reasonably construed, further support this conclusion. Thus in describing times that may be excluded in determining when the State must be ready, Section 4 speaks of inability of the State to determine location of the accused by due diligence, (4)(B); of the State knowing the location of the defendant but being unable to obtain his presence by due diligence, (5); of the State requesting a continuance because of unavailable evidence when the State has exercised due

---

**3.** The Committee on the Administration of the Criminal Law of the United States Judicial Conference prepared a Model Plan which was submitted by the Administrative Office of the United States Courts to each district court, but each district had the option of preparing its

own plan. *Salzmann,* supra, 417 F.Supp. at 1149.

**4.** Acts 1977, 65th Leg., p. 1970, Ch. 787.

diligence to obtain it or because the State needs additional time to prepare its case, (6); of the charge being dismissed upon motion of the State, (7); and of a period of delay caused by defendant's detention in another jurisdiction and the State is aware of that detention and exercising due diligence to obtain his presence for trial. All of these instances plainly contemplate only the prosecuting attorney and just as clearly exclude the idea that the trial court is embraced within the term "the state" being ready for trial.[5]

From the premise that the term "the state" included the trial court respondent moved easily to the conclusion that the crowded condition of the criminal docket of the district courts in El Paso County constituted an exceptional circumstance that permitted a reasonable period of delay to be excluded from the time by which the State must be ready for trial, as provided in Article 32A.02, Section 4, Subsection (10).[6] Having found his premise untenable, I believe that his conclusion of law also falls for that reason as well as another I now proceed to develop.

The federal speedy trial plans that were conditioned upon the government being ready for trial, like our own Speedy Trial Act, also provided for excluding certain periods of time from the computation of readiness. One of the exclusions, as pointed out and discussed in *United States v. Salzmann,* supra, 417 F.Supp. at 1162 was:

"(h) Other periods of delay occasioned by exceptional circumstances."

It must always be kept in mind that what we are addressing is the condition of readiness of the prosecuting attorney to try the particular case at issue rather than that of the trial court. It follows, therefore, that "exceptional circumstances" that are found sufficient to exclude a reasonable period of delay in computing the time within which the State must be ready for trial necessarily arise from something about the case rather than the business of the trial court or, indeed, the state of affairs in the office of the prosecuting attorney. Thus it has been held that to qualify as "exceptional" within the meaning of the federal plan the circumstances may "not be something with which the Plan's drafters were familiar," *United States v. Rodriguez,* 529 F.2d 598, 600 (2 Cir. 1976)[7]. Plainly, it being a matter of general common knowledge, we may attribute to the Legislature its familiarity with the fact of overcrowded dockets in the trial

---

5. Also persuasive in this regard is the fact that the Texas Speedy Trial Act amended, *inter alia,* Article 29.03, V.A.C.C.P., providing for continuance on written motion of the State. We also observe that the Legislature considered "the state" to be synonymous with the prosecuting attorney when it provided in Article 29.04 elements of *sufficiency of a first motion for continuance by the State* and in Article 29.05 for sufficiency of a subsequent motion for continuance by the State; see also Articles 29.12 and 29.13 treating situations where a continuance has been granted to the State or on motion of the State. Chapter 31, V.A.C.C.P., providing for change of venue in certain situations, permits the court to order a change on its own motion "after due notice to accused and the State," Article 31.01, and the prosecuting attorney to seek a change where a fair and impartial trial "as between the accused and the State" cannot be had, Article 31.02. Indeed, in common parlance this Court, like the Legislature, uses the term "the state" interchangeably with the prosecuting attorney when speaking of the

State, as a party, being represented by a district or county attorney. See, e. g., *White v. State,* 543 S.W.2d 366 (Tex.Cr.App.1976) and Articles 2.01 and 2.02, V.A.C.C.P.

6. "Sec. 4. In computing the time by which the State must be ready for trial, the following periods shall be excluded:

* * * * * *

(10) Any other reasonable period of delay that is justified by exceptional circumstances."

7. Thus, neither confusion in the prosecutor's office, *United States v. Favaloro,* 493 F.2d 623 (2 Cir. 1974), nor his desire to finish another investigation, *United States v. Rollins,* 487 F.2d 409, 413 (2 Cir. 1973) are exceptional circumstances for they are matters with which the drafters clearly were familiar, one of the objectives of the plan being to remove just such impediments to a speedy trial.

courts throughout the State[8]—actual awareness is revealed by Article 32A.01 of the Speedy Trial Act itself whereby trial of a criminal action is given preference over a civil case and trial of an accused who is detained in jail is given preference over trial of other criminal actions.

But, more significantly, a crowded court docket is simply not a circumstance that conditions readiness for trial on the part of the State[9]. The exceptional circumstance exclusion pertains to the State being ready for trial, just as it does to the United States Attorney under a federal plan containing substantially the same provision, *U. S. v. Rollins,* 475 F.2d 1108 (2 Cir. 1973). In his findings of fact filed in this cause, the respondent found that the State filed announcements of ready June 30, 1978 and July 3, 1978 in this case as well as all 1200 cases then pending in El Paso County; he further found that the district attorney never announced ready before an assembled jury panel in this case, but from my reading of the record I take this to mean that the occasion for doing so was not presented after the effective date of the Texas Speedy Trial Act. Precisely, then, respondent has not made a finding of readiness on the part of the State—one way or the other. But I observe, somewhat incredulously, that an assistant district attorney testified that had the court called any one of the 1200 cases the following Monday the prosecutor would have taken it to trial "or we would have dismissed the case." Thus, so far as the State was concerned the highly overcrowded criminal docket in the district courts of El Paso County was of no moment whatsoever. The State being ready, or prepared to dismiss the case otherwise, the letter, intent and purpose of the act were satisfied in this case[10].

In coming to that conclusion, I am well aware that trials of criminal prosecutions may be only relatively accelerated by the strictest compliance with the provisions of the act. But if the operation of the act, as I have construed it, fails to produce temporal and quantitative results deemed beneficial in the public interest, such disappointments were presaged by the federal experience that preceded it. The link of readiness on the part of the State is but one of several component links in the drive chain that powers the criminal justice system to the desired point that "trial shall commence" within a given time.

As judge of the court, respondent was called upon to make and did make and render a judicial decision within the jurisdiction of the court. While I have disagreed with the basic theory that led him to the ruling, I agree and approve the result, denial of the motion to dismiss the indictment[11]. Petition for writ of mandamus

---

8. Its recurring apportionment of judicial districts by amendments to Article 199, V.A.C.S., and creation of new judicial districts through initial enactment and biennial amendment of the Judicial Districts Act of 1969, Article 199a, V.A.C.S., attest to legislative recognition of the problem and reflect one method of correcting it.

9. Where the mandate is that "trial shall commence" within a given period of time, as in the Rule 50(b) Plan adopted in the United States District Court for the Southern District of Texas, *U. S. v. Rodriguez,* 375 F.Supp. 589, 592 (S.D.Tex.1974) an "exceptionally crowded docket" provided an exceptional circumstance. And it was just such "institutional delay" that Congress explicitly proscribed by forbidding a judge to grant a continuance due to court calendar congestion, 16 U.S.C.A., § 3161(D)(8)(c),

1974 U.S.Code Cong. & Admin.News, pp. 7401, 7426.

10. I do not intend to say that merely filing a written announcement of ready sufficiently demonstrates the State is actually ready for trial. It is but a prima facie showing that, without challenge, may eliminate necessity for an evidentiary hearing to determine whether in fact the State is ready to go to trial. See *Salzmann,* supra, 417 F.Supp. at 1153.

11. I am aware of the February 15, 1979 opinion in *Grimm v. Garner,* 577 S.W.2d 573 (Tex.Civ. App.—Waco) which affirmed grant of writ of mandamus by a district court commanding a justice of the peace to grant a motion by accused to set aside a criminal complaint filed against him for lack of compliance with applicable provisions of the Speedy Trial Act. In doing so the Court applied the well settled rule

must, therefore, be denied by the Court, and I join its order doing so.

that mandamus would issue to an inferior court to compel the performance of a duty made mandatory by law or the doing of an act that is simply ministerial and involves no judicial discretion. The rule was applied to "the undisput-

ed facts" of the case which included a finding of fact by the district court that "the State was not ready for trial within 30 days" after the commencement date.