

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0504-09

---

### Ex parte OSCAR ROY DOSTER, Appellant

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### FREESTONE COUNTY

---

**KELLER, P.J., delivered the unanimous opinion of the Court.**

We granted appellant's petition for discretionary review to resolve whether the Interstate Agreement on Detainers (IAD) requires that the prosecution against appellant be dismissed.[1] Appellant raised his IAD claim in a pretrial habeas corpus application. The trial court denied relief, and appellate proceedings have followed. Noticing the posture of the case, we asked the parties to

---

[1] Appellant's ground for review reads: "To secure Appellant's presence for a capital murder trial, Texas lodged a detainer on Mr. Doster with the Alabama prison authorities, and extradited him to Texas for purposes of this same prosecution. Under these circumstances, did the Court of Appeals offend the principles that underlay *United States v. Mauro*, 436 U.S. 340 (1978), when it refused to enforce the Interstate Agreement on Detainers?"

brief the following question:[2]

> Is a pretrial habeas corpus proceeding, followed by an interlocutory appeal, an appropriate vehicle for raising a claim that the prosecution should be dismissed because the State failed to comply with the Interstate Agreement on Detainers?[3]

We now answer that question "no."

## I. BACKGROUND

A capital murder indictment was filed against appellant on May 30, 2007. While he was in the Alabama prison system, authorities from Freestone County, Texas, placed a detainer on him for that charge. Although the record does not clearly reflect what legal process was used to extradite appellant to Texas, the parties agree that his presence was obtained pursuant to a Governor's Warrant under the Uniform Criminal Extradition Act (UCEA).[4] Appellant arrived in Texas on December 27, 2007. He was arraigned on January 28, 2008.

At the arraignment hearing, the trial judge suggested a trial date of May 5, 2008. After the prosecutor cited a conflict in his schedule, the trial judge suggested a trial date of June 2nd. Defense counsel responded that, with all the investigation he needed to do, he did not anticipate being able to go to trial by June of 2008. The prosecutor then mentioned that he had a conflict with the June 2nd date. The trial judge then suggested a trial date of August 4th. Defense counsel then explained that the August 4th date might produce a conflict with a thirty-year-old case that he might be able to

---

[2] *See Castaneda v. State*, 138 S.W.3d 304, 307 (Tex. Crim. App. 2003)(op. on original submission)(Court can raise threshold issues on its own motion); *see Pena v. State*, 191 S.W.3d 133, 138 (Tex. Crim. App. 2006)("Of course, even when an appellate court is not obligated to order briefing on an issue it has decided to raise on its own, it may do so in its discretion.").

[3] *Ex parte Doster*, No. PD-0504-09 (October 21, 2009)(not designated for publication).

[4] *See* TEX. CODE CRIM. PROC. art. 51.13.

settle. Defense counsel stated that he had "no objection to the Court setting" appellant's trial for August 4th, but he said that he would "reserve the right to move to continue if the need arises." A pretrial hearing was set for March 25th.

On March 25th, in addition to addressing various pretrial matters, defense counsel requested that trial occur within the time limit established by the IAD. According to counsel's estimate, the IAD deadline for commencing the trial was "about 31 days from today's date."[5] The prosecutor replied that he had a capital murder trial in Anderson County "beginning next Wednesday" that would take all of April and last "possibly through May the fifth." The prosecutor pointed out that the trial judge had previously set the trial for August 4th and that no objection had been raised to that trial setting at the last hearing. The prosecutor also explained that he had another capital murder trial in Coleman County in the middle of June. The trial judge retained the August 4th trial setting but invited the prosecutor to review the IAD and respond.

On April 2nd, the State filed a written motion "to retain the current trial setting." In that motion, the State contended that the trial judge's setting of the case, with the agreement of the parties, was a "necessary or reasonable continuance" in accordance with the IAD's requirements.[6] In the alternative, the State moved to continue the case until August 4th, set forth several reasons for finding good cause to do so, and requested a hearing on the matter "for a date prior to April 25, 2008."

On April 4th, appellant filed a reply to the State's motion to retain the current trial setting.

---

[5] *See id.*, art. 51.14 ("IAD"), Art. IV(c)(trial must commence within 120 days unless "necessary or reasonable continuance" is granted for "good cause shown").

[6] *See id.*

In his reply, appellant contended that he had timely asserted his right to a speedy trial under the IAD and that he had a right to have trial commence before April 25th. On April 11th, appellant filed a document entitled "Defendant's Objection to Delay." In this document, appellant responded to the reasons for continuance offered by the State in its motion to retain the current trial setting, and appellant reiterated that he should be tried "within 120 days of [his] arrival in Texas." On May 2nd, appellant filed a motion to dismiss for failure to comply with the IAD deadline. A hearing was held on that motion on June 24th. The trial judge denied the motion and made a finding that "the August 4th trial setting that was entered on January 28th was an agreed setting."

On July 8th, appellant filed a pretrial application for a writ of habeas corpus. In that application, he contended that he was entitled to a dismissal of the prosecution under the IAD, and he contended that a "stay of all proceeedings in the criminal prosecution is required" to protect his right to have the case dismissed without a trial. The trial judge denied the habeas application on July 28th, and appellant filed a notice of appeal on July 31st.

Initially, the court of appeals reversed the conviction, holding that the State had failed to comply with the IAD's time limits.[7] Chief Justice Gray dissented, arguing that the IAD did not apply because appellant was extradited under the UCEA, or even if the IAD did apply, appellant's conduct in agreeing to a trial date beyond the IAD deadline resulted in his claim being barred by waiver or estoppel.[8] Granting the State's motion for rehearing, the court of appeals issued a new opinion

---

[7] *Ex parte Doster*, No. 10-08-00276-CR, 2008 Tex. App. LEXIS 9769, at 1-7 (Tex. App.–Waco December 31, 2008)(withdrawn).

[8] *Id.* at 7-49 (Gray, C.J., dissenting).

holding that the IAD did not apply because appellant was extradited under the UCEA.[9]

Arguing that the court of appeals's opinion was contrary to the Supreme Court's decision in *United States v. Mauro*, appellant petitioned for discretionary review, which we granted. As mentioned above, we requested supplemental briefing on whether an IAD claim was cognizable in an interlocutory appeal from the denial of a pretrial habeas corpus application.[10] The parties have submitted their supplemental briefs, and we now turn to that question.

## II. ANALYSIS

The State concedes that "the conservation of judicial resources would be better served by interlocutory review in a case of an unsettled IAD violation."[11] Nevertheless, the State contends that an IAD violation is not the type of violation that is cognizable on pretrial habeas. The State argues that the IAD speedy trial provisions are similar to constitutional and statutory speedy trial provisions that this Court has held may not form the basis for interlocutory review.[12] Relying upon *Ex parte Sanchez*,[13] a *postconviction* habeas case involving the IAD, the State further argues that an IAD violation does not constitute a cognizable claim because it does not involve a "jurisdictional defect

[9] *Ex parte Doster*, 282 S.W.3d 110 (Tex. App.–Waco 2009).

[10] Due to the disposition of the issue we raised in our request for supplemental briefing, we need not address the UCEA issue.

[11] Internal quotation marks omitted.

[12] *See Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001)(pretrial habeas cannot be used to assert constitutional right to a speedy trial); *Ex parte Delbert*, 582 S.W.2d 145, 145-46 (Tex. Crim. App. 1979)(no interlocutory review, by mandamus or habeas, of ruling on statutory right to speedy trial).

[13] 918 S.W.2d 526 (Tex. Crim. App. 1996).

or the denial of a fundamental or constitutional right."[14]

Appellant agrees with the State that the conservation of judicial resources would be better served by permitting an interlocutory appeal. He further contends that an interlocutory appeal is necessary to satisfy the express purpose of the IAD to encourage the prompt disposition of pending criminal charges.[15] Relying upon *United States v. MacDonald*[16] and our citation to *MacDonald* in *Ordunez v. Bean*,[17] appellant argues that the speedy trial provisions of the IAD are not akin to the general right to a speedy trial because the general right to a speedy trial requires an assessment of the trial record to determine whether the defendant has been prejudiced, while an IAD speedy trial claim requires no such assessment. In addition, appellant criticizes the State's reliance upon *Sanchez* because it was a *postconviction* habeas proceeding, and, relying upon *Ex parte Dickerson*,[18] appellant points to a statute-of-limitations claim as an example of a type of a nonjurisdictional, statutory claim that is cognizable in a *pretrial* habeas proceeding. Appellant also contends that the IAD's speedy trial provisions are akin to Double Jeopardy protections, affording a right to avoid trial. Finally, appellant points to other court of appeals cases in which an IAD claim was raised in a pretrial habeas application as evidence that the practice is not unusual.

Although various courts of appeals have decided cases that arose before them on an

---

[14] *See id.* at 527.

[15] *See* IAD, Art. I ("it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges").

[16] 435 U.S. 850 (1978).

[17] 579 S.W.2d 911 (Tex. Crim. App. 1979).

[18] 549 S.W.2d 202 (Tex. Crim. App. 1977).

interlocutory appeal from the denial of a habeas application, we are unaware of any cases from this Court addressing an IAD claim in that posture. The cognizability of IAD claims on pretrial habeas is an issue of first impression in this Court, and we take the opportunity to address it now.

Because an interlocutory appeal is an extraordinary remedy, appellate courts have been careful "to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage."[19] Aside from double-jeopardy issues,[20] pretrial habeas is not appropriate when the question presented, even if resolved in the defendant's favor, would not result in immediate release.[21] And pretrial habeas is unavailable when the resolution of a claim may be aided by the development of a record at trial.[22] "Pretrial habeas should be reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review."[23] A pretrial habeas application may not be used to assert the constitutional right to a speedy trial[24] or the statutory right to a speedy trial that used to be codified in Chapter 32A of the Code of Criminal Procedure.[25] And, ordinarily, pretrial habeas is not available to "test the sufficiency of the complaint, information,

---

[19] *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005)(internal quotation marks omitted).

[20] *See Ex parte Watkins*, 73 S.W.3d 264, 273-75 (Tex. Crim. App. 2002).

[21] *Weise*, 55 S.W.3d at 619.

[22] *See Ex parte Smith*, 185 S.W.3d 887, 893 (Tex. Crim. App. 2006).

[23] *Weise*, 55 S.W.3d at 620.

[24] *Id.*

[25] *Delbert*, 582 S.W.2d at 145-46. In a case decided after *Delbert*, Chapter 32A has been struck down as an unconstitutional violation of the Separation of Powers provision of the Texas Constitution. *Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987).

or indictment."[26]

An historical exception to the rule against testing the sufficiency of the charging instrument by pretrial habeas has been to permit a challenge when the face of the charging instrument shows that the prosecution is barred by limitations.[27] Statements in our recent cases trace their lineage to the 1977 decision in *Ex parte Dickerson*.[28] Our rationale for the holding in *Dickerson* was that a pleading that shows on its face that the offense is barred by limitations is "so fundamentally defective that the trial court does not have jurisdiction."[29] That rationale has been undercut by two later developments: (1) the 1985 amendment to the Texas Constitution that narrowly defined jurisdiction with respect to charging instruments,[30] and (2) our 1998 decision in *Proctor v. State*, holding that a statute of limitations defense is forfeited if not raised by the defendant in a timely fashion.[31] Moreover, *Dickerson* traces its lineage to *Ex parte Hoard*, a *postconviction* habeas proceeding.[32] To the extent that *Dickerson* recognized a unified standard of cognizability for both pretrial and postconviction habeas, any attempt to use that case to support the notion that IAD claims are cognizable on pretrial habeas would be undercut by our later decision in *Sanchez*, which held that

---

[26] *Weise*, 55 S.W.3d at 620.

[27] *See Dickerson*, 549 S.W.2d at 203-04; *Smith*, 178 S.W.3d at 802, 802 ns.14, 15, 18, 19 (citing *Ex parte Tamez*, 38 S.W.3d 159, 160 (Tex. Crim. App. 2001) and *Dickerson*); *Weise*, 55 S.W.3d at 620, 620 n.18 (citing *Tamez*, in turn citing *Dickerson*).

[28] *See* this opinion, previous footnote.

[29] *Dickerson*, 549 S.W.2d at 203.

[30] *See Studer v. State*, 799 S.W.2d 263, 265-73 (Tex. Crim. App. 1990); TEX. CONST., Art. V, §12(b).

[31] 967 S.W.2d 840, 844-45 (Tex. Crim. App. 1998).

[32] 63 Tex. Crim. 519, 521-22, 140 S.W. 449, 450-51 (1911).

IAD claims are *not* cognizable in the postconviction habeas setting.[33]

In *Smith*, this Court suggested, in dicta, one rationale for permitting a party to raise a limitations claim on pretrial habeas: "There is no point in wasting scarce judicial and societal resources or putting the defendant to great expense, inconvenience, and anxiety if the ultimate result is never in question."[34] But we have never actually resolved whether such a rationale, absent a jurisdictional or constitutional defect, would be sufficient to make a claim cognizable on pretrial habeas. In *Smith*, we provided a "*but see*" citation to *Proctor* when discussing the cognizability of a limitations challenge,[35] and in any event, we chipped away at what was once an absolute rule by holding that a limitations challenge was not cognizable if it involved just a "reparable" pleading defect.[36]

However, we need not resolve whether pretrial habeas remains a viable avenue for raising a limitations challenge or whether pretrial habeas can ever be used to raise a mere statutory claim. The rationale that would support the continuing cognizability of such a challenge—judicial economy—does not apply to claims based upon the IAD. Although the parties agreed that judicial economy would be better served by allowing IAD claims to be disposed of in pretrial interlocutory

---

[33] 918 S.W.2d at 527.

[34] 178 S.W.3d at 802.

[35] *Id.* at 802 n.19. In the immediate aftermath of *Proctor*, one court of appeals concluded that limitations claims were *not* cognizable on pretrial habeas. *Ex parte Gutierrez*, 989 S.W.2d 55, 56 (Tex. App.–San Antonio 1998).

[36] *Smith*, 178 S.W.3d at 804.

appeals, we are not bound by the parties' views on such a matter,[37] and in fact, we see a flaw in the parties' reasoning. That flaw becomes evident when we examine the speedy trial cases.

Appellant is correct that, in *Ordunez*, this Court cited *MacDonald* for the proposition that speedy trial claims are not subject to interlocutory review,[38] and in *MacDonald*, the Supreme Court did say that the need to assess prejudice was a reason to prohibit interlocutory appeals of constitutional speedy trial claims.[39] But *Ordunez* did not cite *MacDonald* for that rationale. In *Ordunez*, this Court was concerned not only with constitutional speedy trial violations but also with speedy trial violations under Chapter 32A.[40] Prejudice was not a factor to be considered under the statutory speedy trial scheme, which is a reason that the scheme was later held to be unconstitutional.[41] Rather, Chapter 32A contained an exception only for "a reasonable period of delay,"[42] which is similar to the "reasonable continuance" exception found in the IAD.[43]

*Ordunez* relied upon an alternate rationale given in *MacDonald*: "Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely

---

[37] *See Long v. State*, 931 S.W.2d 285, 289 (Tex. Crim. App. 1996)("we are under no obligation to accept a concession on an issue of law even if all parties agree").

[38] *See Ordunez*, 579 S.W.2d at 914.

[39] *See MacDonald*, 435 U.S. at 858-60.

[40] *See Ordunez*, 579 S.W.2d at 912-14.

[41] *Meshell v. State*, 739 S.W.2d at 256.

[42] *See Ordunez*, 579 S.W.2d at 913 (quoting former TEX. CODE CRIM. PROC. art. 32A.02, §4(10)).

[43] *See* IAD, Art. IV(c).

those values manifested in the Speedy Trial Clause."[44] In this alternate rationale, the Supreme Court explained that fulfillment of the speedy trial guarantee "would be impossible if every pretrial order were appealable."[45] The Court further explained that interlocutory appeal of a speedy trial claim would thwart the very purposes of the Speedy Trial Clause:

> Many defendants, of course, would be willing to tolerate the delay in a trial that is attendant upon a pretrial appeal in the hope of winning that appeal. The right to a speedy trial, however, "is generically different from any of the other rights enshrined in the Constitution for the protection of the accused" because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."[46]

Indeed, "some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal."[47]

It is this alternate rationale from *MacDonald* that clearly applied to a Chapter 32A claim, where a posttrial assessment of prejudice was not required, and it applies equally to speedy trial claims under the IAD. Judicial economy is served by pretrial appeal of an IAD claim only if the defendant prevails. If he is allowed to bring his interlocutory appeal and he loses, then, generally, more judicial resources will be expended than had the interlocutory appeal been barred. A defendant in such a situation would undergo a trial and have the opportunity to appeal after conviction, but he would also have been able to obtain a pretrial appeal. A defendant who loses on his IAD claim would spend more time in Texas—contrary to the stated purpose of the IAD and the policy

---

[44] *Ordunez*, 579 S.W.2d at 914 (quoting *MacDonald*, 435 U.S. at 862).

[45] *MacDonald*, 435 U.S. at 861.

[46] *Id.* at 862.

[47] *Id.*

articulated in *Smith* for permitting a pretrial habeas challenge. Given the allocation of burdens on appeal, when the defendant loses at the trial level, the chances preponderate toward the defendant losing on appeal.

This case provides an excellent illustration of how an interlocutory appeal from a pretrial habeas action results in frustrating the prompt resolution of charged offenses under the IAD. Without an interlocutory appeal, appellant would have been tried on August 4, 2008. It is now 2010. Moreover, pretrial appellate delay can become especially long if the case is bounced back and forth between this Court and a court of appeals. Again this case provides a good illustration. Even if we were to hold in appellant's favor on the UCEA issue he presented in his petition for discretionary review, he might still lose on a remand on the ground that his original agreement to the August 4th trial date resulted in a "reasonable continuance" or constituted a waiver or estoppel. He could then file another petition for discretionary review, and if he ultimately loses, then his trial occurs, but is delayed even more by his case being stuck in "appellate orbit."

We must also reject appellant's contention that speedy trial claims under the IAD are akin to Double Jeopardy claims, involving a right not to be tried at all. The speedy trial right under the IAD is to the speedy disposition of the charges; it is not a right not to be tried on those charges. Though the speedy "disposition of the charges" under the IAD is not an identical right to the constitutional right to a speedy "trial," it is much more like the right to a speedy trial than the right against Double Jeopardy. As the Supreme Court explained in *MacDonald*:

> Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.

Likewise, it is the delay in the disposition of the charges, not the actual disposition of the charges through trial and conviction, that offends the provisions of the IAD.[48]

Of course, if it is indeed clear that the IAD has been violated, a pretrial disposition of the claim would most satisfy the underlying purposes of the IAD. If a trial court believes that the IAD has been violated, then it should rule in the defendant's favor in a motion to dismiss, and if it does so, then the State can appeal that disposition.[49] Such an appeal is not interlocutory because a ruling in the defendant's favor would end the prosecution. If the trial court rules against the defendant and the defendant's entitlement to relief is indisputable, as a matter of fact and law, then mandamus might be an appropriate remedy. In the postconviction habeas context, we have recognized a situation in which mandamus proceedings, rather than habeas proceedings, are appropriate.[50] We conclude that pretrial habeas proceedings are not an appropriate avenue for raising an IAD claim.

We vacate the court of appeals's decision and order that this appeal be dismissed.

Delivered: February 3, 2010
Publish

---

[48] Nevertheless, as with constitutional speedy trial claims, the remedy for failing to provide a speedy trial under the IAD is dismissal. *See MacDonald*, 435 U.S. at 861 ("this Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated"); IAD, Art. IV(e).

[49] TEX. CODE CRIM. PROC. art. 44.01(a)(1); *see State v. Williams*, 938 S.W.2d 456 (Tex. Crim. App. 1997).

[50] *Ex parte Ybarra*, 149 S.W.2d 147 (Tex. Crim. App. 2004)(pretrial time credit claims should be pursued by a motion for judgment nunc, and if the trial court refuses to grant such a motion, then by mandamus). However, trial proceedings should never be stayed to consider an IAD claim because such a stay would itself run counter to the purpose of the IAD.