**D. L. LYLES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00244–CR.**

Court of Appeals of Texas, El Paso.

July 7, 1982.

Discretionary Review Granted Oct. 13, 1982.

Talbert, Giessel & Stone, Donald Burger, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Randy McDonald, Asst. Dist. Attys., Houston, for appellee.

Before STEPHAN F. PRESLAR, C. J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a conviction for criminally negligent homicide. The jury assessed punishment at one year probation and a $1,000.00 fine. We reverse.

Appellant presents five grounds of error alleging deprivation of his right to a speedy trial. At the hearing on Appellant's speedy trial motion, the State presented evidence that Assistant District Attorney Henderson had reviewed the offense reports, photographs and scale diagrams in the case file. He also requested further investigation by his own investigator. He then authorized the filing of the criminal information on August 13, 1979. He testified that, at that time, the State was ready for trial from an evidentiary standpoint.

Assistant District Attorney Von Korsigk testified that she was responsible for the case from the filing of the pleadings until her transfer in February, 1980. Within a few days of August 13, 1979, she personally reviewed the file and instructed her investigator to contact the necessary witnesses. On or about August 20, 1979, she instructed her investigator to "run the warrant" on the Appellant. Appellant was residing in Robertson County, a fact known to the State at that time. On September 4, 1979, she received a letter from the Robertson County Sheriff stating that Appellant could not be found. Von Korsigk testified that the State was ready for trial within the 90-day speedy trial limit and at all times thereafter, except for securing the presence of the Appellant.

Assistant District Attorney McDonald testified as to the State's readiness from February 1980 until the actual trial, again excluding the presence of the Appellant.

The defense attempted to rebut the State's claim of readiness by eliciting that the prosecutors had not visited the scene, personally interviewed witnesses, begun preparation for the *voir dire* and charge, or issued subpoenas for witnesses.

The delay in bringing this case to trial was a result of confusion over the Appellant's arrest and bond status. The trial court was not advised of his arrest until March 20, 1980, and therefore had not set the case or summoned the Appellant.

Appellant was allowed to proceed to his home in Hearne, Robertson County, Texas, following his arrest on August 1, 1979, the date of the collision. He remained in Hearne where he owned a business. At no time did he flee, evade service, or refuse a summons.

On August 20, 1979, a warrant was issued which was transmitted from Harris County to Robertson County. The Robertson County officials initially advised Harris County that Appellant could not be located. Nine

days later, on September 13, 1979, he was arrested in Hearne and immediately posted a property bond. He was then released.

The bond was transferred to the Harris County Sheriff's Department on September 17, 1979; it was rejected by the Sheriff's Warrant Section. Neither Deputy Mendenhall nor any of the State's witnesses were able to testify with certainty as to the reason for the rejection. There was some suggestion that a property bond was not acceptable in Harris County, although it was in Robertson. In any event, the Harris County Sheriff's Department treated the arrest and bond as a nullity. Robertson County law enforcement recognized the bond and would not rearrest the Appellant. As a result, Appellant was carried in a non-arrest status and his case was never docketed by the county court.

Assistant District Attorney Henderson became aware of the situation on March 20, 1980, when Appellant tendered a second bond. The second bond provided the same security as the first. To avoid further impasse, Henderson called the trial judge and vouched for the bond. The case was then docketed and a summons issued for March 28, 1980.

The attack on the State's evidence is without merit. Testimony indicated that pre-information review of criminally negligent homicide cases is more extensive in Harris County than with any other misdemeanor offense. Three prosecutors testified that they had personally examined the offense reports, diagrams, photographs and witness statements. Additional investigation had been conducted by the District Attorney's own investigators. The witnesses had been contacted, if not subpoenaed. The Chief Prosecutor, Mr. Henderson, testified that the State was prepared to prove each and every element of the offense at the time the information was filed.

▬ Failure to visit the scene of the accident does not demonstrate inadequate preparation through photographs and diagrams. Similarly, the absence of personal interviews with the witnesses does not show a lack of readiness at that stage of the proceedings. Witness statements had been reviewed and no date for the live testimony had been set. Since no jury panel had even been formed, the State could hardly be found unready for not presenting a prepared *voir dire* or jury charge.

▬ The State testified that it was ready from an evidentiary standpoint within the 90-day limit established by Article 32A.02 of the Code of Criminal Procedure. The contrary evidence was insufficient to rebut this assertion. Appellant's Grounds of Error Nos. Two and Three are overruled.

▬ Grounds of Error Nos. Four and Five both require review under the standard established in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972); *Ex parte Beech*, 591 S.W.2d 502, 504 (Tex.Cr.App.1979). Appellant does not present a compelling claim under the *Barker* doctrine. The seven and one-half month delay in this case hardly compares to the five year delay in *Barker*. The Appellant asserted his speedy trial claim at the time of his first trial setting on March 28, 1980, but promptly agreed to three continuances, resulting in three additional months of delay. Appellant also failed to demonstrate any harm resulting from the delay. He was in jail less than one day, and remained at liberty under the disputed bond for the remainder of the time. There was no evidence of disruption of his family life or business. Nor did he demonstrate any prejudice to his defense by loss of favorable evidence. The cause of the delay lacks any justification, but, standing alone, will not justify a conclusion that Appellant's constitutional rights were violated, depriving him of a fair trial. Grounds of Error Nos. Four and Five are overruled.

We are constrained to agree with Appellant's Ground of Error No. One. Article 32A.02 directs the trial court to grant a motion to set aside an indictment if the State is not ready for trial within 90-days of the commencement of a class A misdemeanor action. Under Section 2, this action commenced on August 13, 1979. The State first secured the presence of the Appellant

on March 28, 1980, 228-days after commencement. The period March 28 to June 18, 1980, is not charged to the State since that period of delay was attributable to agreed continuances by both parties. Article 32A.02, Section 4(3), Tex.Code Crim. Proc.Ann.

■ The State may be ready for trial from an evidentiary standpoint, and yet not ready for trial, under Article 32A.02, for failure to secure the presence of the defendant. The presence of the defendant is a readiness burden which falls upon the State. This is clearly indicated by the fact that the speedy trial tolling exceptions include three instances in which the State will not be charged with delays due to the defendant's absence.

■ Section 4(4) excuses any period during which the accused's location is unknown and either he is avoiding apprehension or the State cannot determine his location with due diligence. This clearly does not apply to the delay in this case. Appellant's location was known to authorities in both Harris and Robertson counties. He was arrested thirty days after the information was filed. He posted bond, in which he promised to answer any summons to the Harris County court. He did, in fact, appear in response to all summons issued. He neither fled nor attempted to conceal his whereabouts.

Section 4(9) excuses delays due to incarceration in other jurisdictions if the State exercises due diligence in attempting to secure the defendant's presence for trial. This also is inapplicable to the facts of this case.

■ Section 4(5) is the only provision applicable to these facts, and the State has failed to meet the requirements of the exception. This section excuses a delay resulting from the unavailability of a defendant whose location is known but whose presence cannot be obtained by the State's exercise of due diligence or because he resists being returned. The latter portion is certainly not pertinent here.

The critical question is whether the State could have secured Appellant's appearance and trial within the 90-day time limit with due diligence. It is tempting to point out that they ultimately did so with one telephone call and go no further. All that was necessary for Appellant's appearance was a summons. All that was necessary for a summons to issue was a court setting. The simple prerequisite for the setting was a notification to the court by either the prosecuting authority or the Sheriff's Department that the Appellant had been located and promised to appear. Instead, the Sheriff's Warrants Section continued to carry the case in a non-arrest status while it conducted a needless squabble over the Appellant's bond.

We are not confronted with a case of docketing delay such as that addressed in *Barfield v. State*, 586 S.W.2d 538, 541 (Tex. Cr.App.1979), or *Ordunez v. Bean*, 579 S.W.2d 911, 912, 541 (Tex.Cr.1979). The court's function necessitated the provision of accurate arrest information by the prosecuting or law enforcement authorities. This was withheld by that segment of the criminal justice mechanism which Article 32A.02 labels "the State."

The State was able to secure Appellant's docketing, summons and appearance with one intra-courthouse telephone call. In light of this simple expedient, the failure to meet the requirements of Article 32A.02, Section 1, can hardly be excused as something beyond the State's due diligence.

If the informality of the ultimate process was unacceptable at an earlier, timely stage, the State and its law enforcement agents had ready access to statutory vehicles for acquiring the Appellant in a more secure fashion. The Code of Criminal Procedure, Articles 15.06, 15.16, 15.17 (Supp. 1982), and 15.18 through 15.21 provided a mechanism by which the Appellant's custody could have been obtained by the Harris County authorities. Articles 16.16 and 23.-11 make provision for correcting defective bonds both before and after the filing of the charging instrument. While the caption for Article 23.11 addresses felony cases,

the language of the latter half of the statute suggests its applicability in misdemeanor cases. Articles 16.16 and 23.11 enable the courts to take corrective action, but only upon information provided by the prosecuting authority or appropriate law enforcement agency.

This case presents a delay beyond the allowable parameters of Article 32A.02. The delay is attributable to the State prosecuting authorities and their agent, not the court system. The delay could have, and should have been, avoided by simple means, not requiring any strenuous exercise of due diligence by the State. Appellant's Ground of Error No. One is sustained.

The conviction is reversed and the cause remanded to the trial court for dismissal.