**D.L. LYLES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 709–82.**

Court of Criminal Appeals of Texas, En Banc.

May 18, 1983.

Donald Ray Burger, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft, Randy McDonald, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted by a jury of criminally negligent homicide, and his punishment was assessed by the court at one (1) year's confinement in the county jail and at a fine of $1,000.00. On appeal the El Paso Court of Appeals reversed the conviction for refusal to dismiss the information for

failure to comply with the Speedy Trial Act (Article 32A.02, V.A.C.C.P.). *Lyles v. State,* 636 S.W.2d 268 (Tex.App.—El Paso 1982). The appellate court found the State was not ready for trial within the 90 day time limit set by statute in view of the appellant's absence which resulted from a delay in processing the bond in the Sheriff's office. We granted the State's Petition for Discretionary Review to determine the correctness of that holding and because of an apparent conflict between the decision of the El Paso Court of Appeals and that rendered by the Dallas Court of Appeals in *McPeters v. State,* 624 S.W.2d 375 (Tex.App.—Dallas 1981) (No Petition for Discretionary Review history).

The prosecution in the instant case stemmed from a traffic collision on August 1, 1979 in Harris County between a semi-tractor driven by the appellant and an automobile occupied by the victim. The injuries suffered by the victim resulted in her death. Appellant Lyles was arrested on August 1, 1979, gave an in-custody statement and was released within 24 hours apparently without bond. He returned to his home in Robertson County.

A complaint and information were filed on August 13, 1979. The presence of the appellant for trial was not procured until approximately March 28, 1980. On May 20, 1980, the appellant filed his motion to dismiss the information for failure to provide a speedy trial. On May 27, 1980, the court, after a hearing, denied the said motion.

Article 32A.02, supra, provides in part:

"Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

"(1) * * *

"(2) 90 days of the commencement of a criminal action if the defendant is ac-

cused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days; or . . . ."

Criminally negligent homicide is a Class A misdemeanor. V.T.C.A., Penal Code, § 19.07.

V.T.C.A., Penal Code, § 12.21, provides:

"An individual adjudged guilty of a Class A misdemeanor shall be punished by:

"(1) a fine not to exceed $2,000;

"(2) confinement in jail for a term not to exceed one year; or

"(3) both such fine and imprisonment."

Under the Speedy Trial Act the State was required to be ready for trial within 90 days of the commencement of the criminal action in the instant case. Article 32A.02, § (2)(a), supra, provides:

"Sec. 2. (a) Except as provided in Subsections (b) and (c) of this section, a criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested."

In the instant case while the appellant was arrested on August 1, 1979 and detained in custody, he was released within 24 hours without bail and without charges being filed. The El Paso Court of Appeals was correct under the particular circumstances in finding the time limitations of Article 32A.02, supra, began on August 13, 1979, with the filing of the information.[1] Cf. Attorney General Opinion MW–41 (8/8/79).

---

1. Actually it is immaterial to this decision whether the criminal action commenced under the Texas Speedy Trial Act on August 1st or August 13th. Under the federal constitutional rule in determining whether the right to a speedy trial has been denied, the length of delay is measured from the time the defendant is formally accused or arrested. *United States*

*v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); *Turner v. State,* 545 S.W.2d 133, 137 (Tex.Cr.App.1976). See also *Davis v. State,* 630 S.W.2d 532, 539 (Tex.App.—Amarillo 1982).

We are not here dealing with a situation where the State files an announcement of ready among the papers of the cause soon after the filing of the information, nor a situation where the case is set for trial and the State announces ready when the case is called for trial within the time limitation set by statute.

At the hearing on the speedy trial motion assistant district attorney Thomas Henderson testified he reviewed the offense report, diagrams of the scene and photographs, and requested additional investigation. He authorized the filing of the information on August 13, 1979. Henderson stated the State was ready on that date save for the presence of the appellant.

On August 20, 1979 an arrest warrant was issued and transmitted from Harris County to Robertson County.

Marie Von Krosigk, chief prosecutor in the court where the information was filed from filing until February, 1980, reviewed the file and ordered an investigator to contact necessary witnesses. It was learned appellant resided in Robertson County. Von Krosigk contacted the Hearne Police Department to "run the warrant" on appellant. She was informed by letter of September 4, 1979 such police department was unable to locate appellant. Von Krosigk testified the State was ready within the 90 day time limit excluding the presence of the appellant.

On September 13, 1979, appellant was arrested in Hearne and posted a surety bond approved by the Sheriff of Robertson County.[2]

The bond was transmitted to the Harris County Sheriff's office but was rejected by the warrant section. Neither Deputy John Mendenhal nor any of the other witnesses were able to testify as to the reason for the rejection. The Harris County Sheriff considered the bond a nullity and the Robertson County law enforcement authorities recognized the bond. The appellant was

carried in a non-arrest status and his case was never set for trial.

Prosecutor Henderson became aware of the situation about March 20, 1980, when appellant tendered a second bond providing the same security. The bond was apparently still unacceptable to the Harris County Sheriff's office. Henderson, to avoid further delay, called the trial judge at home and vouched for the bond. The case was then set for trial.

The trial commenced on June 18, 1980. The State first secured the presence of the appellant on March 28, 1980, 228 days after the commencement of the criminal action on August 13, 1979. The period from March 28, 1980 to June 18, 1980 is not charged to the State since that period of delay was attributable to agreed continuances by both parties. Article 32A.02, § 4(3), V.A.C.C.P.

Turning to the question presented, we observe the Court of Appeals correctly pointed out that the "State may be ready for trial from an evidentiary standpoint, and yet not ready for trial, under Article 32A.02, for failure to secure the presence of the defendant. *The presence of the defendant is a readiness burden which falls upon the State.* This is clearly indicated by the fact that the speedy trial tolling exceptions include three instances in which the State will not be charged with delays due to the defendant's absence." (Emphasis supplied.)

Article 32A.02, § 4, provides in relevant part:

"In computing the time by which the state must be ready for trial, the following periods shall be excluded:
"* * *

"(4) a period of delay resulting from the absence of the defendant because his location is unknown and:

"(A) he is attempting to avoid apprehension or prosecution; or

---

2. The Court of Appeals' opinion refers to a "property bond," apparently meaning surety bond. See Article 17.11, et seq., V.A.C.C.P. The term "property bond" apparently came

from the affidavit of the Robertson County Sheriff introduced at the hearing on the speedy trial motion.

"(B) the state has been unable to determine his location by due diligence;

"(5) a period of delay resulting from the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial;

" * * *

"(9) a period of delay resulting from detention of the defendant is another jurisdiction, if the state is aware of the detention and exercises due diligence to obtain his presence at trial."

This court recently interpreted this portion of the Speedy Trial Act in *Newton v. State,* 641 S.W.2d 530 (Tex.Cr.App.1982). Therein we noted:

"Because the statute specifically excludes time periods when the defendant is absent under the limited circumstances stated in Sec. 4(4), (5) and (9) quoted above, it is obvious that *mere absence of the defendant is a circumstance that, except for those specific statutory exclusions, does not toll the statute and therefore prevents the State from being ready within the meaning of the statute.* If the absence of the defendant was intended by the Legislature to have no effect on the readiness of the State, there would be no need for the statutory exclusions of Sec. 4(4), (5) and (9). *We therefore hold that appellant's absence effectively rebutted the prima facie showing of readiness made by the State.*" Id. (Emphasis supplied.)

The clear import of *Newton,* as well as the opinion of the Court of Appeals in the instant case, is that securing the defendant's presence is a readiness burden which falls upon the State under the Speedy Trial Act.

Under the provisions of § 4 of Article 32A.02, supra, only subsection 5 is applicable to the circumstances of the instant case if any time period is to be excluded. And even the latter portion of subsection 5 "or

because he resists being returned to the State for trial" is not pertinent here.

The question is whether under the circumstances the State used due diligence in obtaining appellant's presence within the 90 day time limitation. Here the State had appellant's written statement taken on the date of the alleged offense listing his address in Hearne. On September 13, 1979, appellant executed a surety bond which was approved by the Sheriff of Robertson County. It gave an address in Hearne. The bond was rejected by the Sheriff of Harris County for a reason or reasons that do not appear clear from the record. Thereafter, it does not appear any effort was made by the State or its law enforcement agents to secure another warrant of arrest because of a defective bond, if that was what it was,[3] or take any action to obtain the presence of the appellant within the 90 day period. When the appellant sometime thereafter submitted a second bond, it was again rejected, but the prosecutor secured approval by the trial court by telephone for a setting and the appellant appeared in response to a summons.

As the Court of Appeals stated:

"All that was necessary for Appellant's appearance was a summons. All that was necessary for a summons to issue was a court setting. The simple prerequisite for the setting was a notification to the court by either the prosecuting authority or the Sheriff's Department that the Appellant had been located and promised to appear. Instead, the Sheriff's Warrants Section continued to carry the case in a non-arrest status while it conducted a needless squabble over the Appellant's bond."

The State argues that the absence of the appellant during the 90 day time limit should not be attributed to the State, that is the prosecutor's office, for the delay by the Sheriff's office procedures was not prosecutorial delay.

The State relies upon *McPeters v. State,* 624 S.W.2d 375 (Tex.App.—Dallas 1981),

---

**3.** See Article 16.16, V.A.C.C.P. Cf. Article 23.- 11, V.A.C.C.P.

where the trial delay was due to a mistake in the Sheriff's office in processing the bond made by McPeters. There the Dallas court wrote:

"The Speedy Trial Act provides that the court shall set aside an indictment, information, or complaint 'if the State is not ready for trial' within certain time limits. It has been held that the Act addresses itself to prosecutorial delay rather than the judicial process as a whole. See *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979); *Ordunez v. Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979) (concurring opinion by Clinton, J.). As a result, the Court of Criminal Appeals has concluded that the overcrowding of a trial court's docket is an 'exceptional circumstance' which justifies tolling the time period under the Speedy Trial Act. *Barfield v. State,* supra; *Ordunez v. Bean,* supra. We find this analysis controlling. * * * This delay was occasioned by the procedures of the sheriff's department, and was in no way attributable to the prosecutor's failure to proceed on the merits of the case. We hold that this delay was an 'exceptional circumstance' within the terms of section 4(10) of the Speedy Trial Act that tolled the statute from June 4, 1979 to August 8th, 1979. * * * Accordingly, we hold that the delay in processing appellant's bond in the sheriff's department justified the delay in bringing appellant to trial. No error is shown."

In *Barfield* this court made clear the Speedy Trial Act refers to the preparedness of the prosecutor for trial, and does not encompass the trial court and its docket. See also *McMahon v. State,* 630 S.W.2d 730, 736 (Tex.App.—Houston [14th] 1982). The prosecutor cannot excuse a lack of due diligence on his part by pointing the finger at the Sheriff or other law enforcement agency. The circumstances reflect the situation was resolved once the prosecutor began to exercise diligence in the matter. The delay is attributable to the prosecuting authority and not the court. The delay could have,

and should have been avoided by simple means, not requiring any stenuous exercise of due diligence by the State.

Further, we fail to see how a delay resulting from a mistake in the processing of a bail bond in a Sheriff's office is an "exceptional circumstance" as envisioned by § 4(10) of Article 32A.02, supra. *McPeters* is overruled as to the extent of any conflict with today's opinion by this court.

We conclude that securing the presence of the appellant was a burden which fell upon the prosecution. The State failed to meet that burden and failed to demonstrate the application of any of the relevant exemptions which operate to extend the time limits imposed by the Speedy Trial Act. The trial court erred when it refused to dismiss the information as required by Article 32A.02, supra.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, concurring.

Criminally negligent homicide is a Class A misdemeanor. V.T.C.A. Penal Code, § 19.07. Once an information has been filed by the prosecuting attorney, Articles 2.05 and 21.21, § 9, V.A.C.C.P., that officer has the option of causing a capias or summons to issue from the court having jurisdiction of the cause, and the latter may issue "*only upon request* of the attorney representing the State," Article 23.04, *id.*[1] A capias is a command to any peace officer of the State of Texas to arrest the named accused and bring him before the *court* at a time therein prescribed, either *instanter* or a day certain, Articles 23.01 and 23.02, *id.* After it is issued, the capias may be "mailed to the sheriff of the county where the defendant resides or is to be found," Articles 23.03 and 23.04, *id.* Any officer making an arrest under a capias in a misdemeanor may take a bail bond of the defendant, Article 23.14, *id.,* and having done so shall return such bond together with the capias to the proper *court,* Article 23.17, *id.,* reporting on return of capias "what disposition has been

1. All emphasis is supplied by the writer of this opinion unless otherwise indicated.

made of the defendant," Article 23.18, *id.* See also Article 15.18, *id.*[2] Essentially that is what had happened here by on or about September 15, 1979—some thirty days after filing for information.

So far the process prescribed by the code of criminal procedure—initiated by the prosecuting attorney and carried out respectively by officers of the court and others, has not implicated the "warrant section" of the Harris County Sheriff, and I have not found any provision of the code of criminal procedure that authorizes it to "reject" a bail bond taken and approved by the Sheriff of Robertson County, or to treat appellant's arrest and bond as a nullity.[3]

We need not hold, and as I read the majority opinion it is not even implied, that a prosecutor "has any control over or responsibility for" conduct of the duties of any sheriff. But, having opted for a capias rather than summons at the outset, and thereby in effect made every peace officer of the State its instrument for properly executing it, the prosecution in this, or any other similar situation, is obliged by its own assigned responsibility to exercise due diligence to follow through in the endeavor to obtain the presence of an accused for trial. After all, investigators employed by district and county attorneys are peace officers, Article 2.12, V.A.C.C.P., and as such are authorized to execute all lawful process, as well as sheriffs.

A simple inquiry by the prosecuting attorney or his investigator would have revealed the position adopted by the "warrant section," and corrective measures could have been timely invoked by the prosecution.

For example, deferring to the view of the warrant section, the prosecutor was authorized to make it appear by affidavit to the judge of the court that bail taken by the Sheriff of Robertson County was "insufficient in amount, or that the sureties [were] not good for the amount, or that the bond [was] for *any reason* defective or insufficient," and obtain a fresh warrant of arrest, requiring of appellant "sufficient bond and security." Article 16.16, V.A.C.C.P. For another, by passing completely the warrant section, the prosecution was authorized, as it ultimately did, to request that the case be set for trial and that a summons issue for appellant to appear at the stated time and place of trial.[4]

I adhere to my interpretation of germane provisions of the Texas Speedy Trial Act, first expressed in *Ordunez v. Bean,* 579 S.W.2d 911, 915–920 (Tex.Cr.App.1979). Indeed, what has been written today builds on the "diligence" provisions of the Act then "reasonably construed" to support the since accepted conclusion that " 'the state' means the affected district attorney or other prosecuting attorney . . . ," *id.,* at 917–918. As I read it, the opinion of the Court in the case at bar, is in harmony with those interpretations and constructions.

Accordingly, I concur in the opinion and judgment of the Court.

McCORMICK, MILLER and CAMPBELL, JJ., join.

**2.** One arrested under a warrant issued in a county other than the one in which the person is arrested shall be taken before a local magistrate "who shall take bail, if allowed by law, and immediately transmit the bond taken to the court."

**3.** Had the situation been one in which appellant *refused* to give bail in Robertson County, the Harris County Sheriff would have been authorized by Article 15.20 *id.* forthwith to "go or send for" him and have him brought before the

proper court; but, a failure to do so within ten days of commitment entitled appellant to be discharged from custody.

**4.** Together, in a misdemeanor case, Articles 23.04 and 23.03, supra, provide that a summons "need not" issue for an accused in custody or under bond. Thus, the attitude of the warrant *section should not have inhibited the prosecu*tor in his own efforts to secure the presence of appellant for trial.