Calvin Louis MIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–85–403–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 1986.

Joe Doucette, Houston, for appellant.

John B. Holmes, Jr., David E. Brothers, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction for murder. Punishment was assessed by the court at thirty (30) years imprisonment. Appellant contends the trial court erred; (1) in failing to dismiss the indictment for violation of the Speedy Trial Act; (2) in admitting evidence of appellant's prior conviction at the guilt-innocence stage of the trial; (3) in refusing to grant his motion for an instructed verdict based on insufficient corroborating evidence of accomplice testimony; and (4) in refusing to grant his motion for an instructed verdict based on the State's failure to prove the corpus delecti. We affirm.

A review of the facts is necessary to fully appreciate appellant's complaints. On December 4, 1981, around midnight, appellant and two others (George—a female—and Danny) arrived in a pick up truck at

Ronnie Hill's home, awakening Hill and his pregnant wife. Hill testified that he and appellant were friends in that they had previously ridden motorcycles together and "partied" at Hill's house. Hill and his wife went outside and were shown a naked, beaten female in the bed of the truck covered by a shower curtain. Appellant pulled the female from the truck and began beating her. While engaged in this activity, appellant called his victim by the name "Renee". Appellant and George continued beating the girl for an hour before they tired and went into Hill's living room to sleep. Danny, who had been holding a .22 rifle, remained outside on guard duty. Hill and his wife returned to their bedroom. Sometime during the night, Hill and his wife went outside to check on Renee and brought her a blanket. When she asked to be taken out of there, Hill refused. He testified at trial that he did not assist the deceased because he had no transportation and because he was afraid for himself and his pregnant wife. The next morning, Hill was the first to discover Renee had died during the night. He carried her into the kitchen and awakened the others. After some discussion, Renee was buried in a shallow grave in Hill's yard. Hill helped dig the grave and let Danny and appellant use his shovel.

Thereafter appellant was indicted for the aggravated kidnapping of Lynn Renee Mau. In March of 1982, appellant pled guilty to that offense and was sentenced to five (5) years imprisonment. More than two years later, in March of 1984, Mr. Hill contacted the police and reported what had happened at his house on December 4, 1981. Appellant was thereafter indicted for the murder of Lynn Renee Mau.

In his first ground of error, appellant asserts the trial court erred in overruling his motion to set aside the indictment under the Speedy Trial Act. Tex.Code Crim.Proc. Ann. art. 32A.02. On July 30, 1984, appellant was indicted for the offense on which this appeal is based. The following day, on July 31, 1984, appellant was released from prison. Although appellant kept all appointments with his parole officer, he was not arrested until January 18, 1985, over five months after his indictment on the murder charge. At the May 8, 1985 hearing on appellant's motion to set aside the indictment, the State announced ready and that it had been "ready for trial on each and every court appearance."

Article 32A.02 of the Speedy Trial Act requires a court to grant a motion to set aside an indictment if the State is not ready for trial within 120 days of the commencement of a criminal felony action. Section 4 of the same article provides that in computing the time by which the State must be ready for trial, there shall be excluded a period of delay resulting from the absence of the defendant because his location is unknown and the State has been unable to determine his location by due diligence. Therefore, the relevant inquiry is whether during the five months following the indictment, the State diligently attempted to locate appellant.

■ The State contends the cause of delay in the apprehension and arrest of appellant was the result of an erroneous spelling of his name on the indictment as well as other bureaucratic snags, and not because of a lack of diligence. We agree.

One of appellant's parole officers testified that there had been some confusion regarding appellant's status with the parole office. She stated that his original record mistakenly reflected that he was an absconder. Therefore, anyone attempting to check on appellant would have been informed that he was a fugitive. Furthermore, the clerk for the 174th District Court testified that appellant's last name was incorrectly spelled on the indictment. Finally, the record indicates that the State, through the Harris County Sheriff's Department, made four separate attempts at three locations to serve the warrant for appellant's arrest. Each attempt proved fruitless as did conversations with neighbors. Thereafter, the Sheriff's Department entered appellant's name and fugitive status into the Crime Computer System.

We find that upon these facts the trial court was justified in concluding that the State had exercised due diligence in attempting to apprehend appellant. The State repeatedly visited the areas they believed appellant frequented. Moreover, but for the bureaucratic obstacles, not the fault of the police department, and the erroneous spelling of appellant's name on the indictment, appellant probably would have been apprehended within the 120-day time limit. In any event there is no showing that the police *knew* that appellant was regularly reporting to his parole officers. *Coachman v. State*, 692 S.W.2d 940, 943 (Tex. App.—Houston [1st Dist.] 1985, no pet.). *See also Amador v. State*, 696 S.W.2d 460, 462–63 (Tex.App.—Houston [14th Dist.] 1985, no pet.); *Jackson v. State*, 659 S.W.2d 69, 70–71 (Tex.App.—Houston [14th Dist.] 1983, no pet.). *Accord Lyles v. State*, 653 S.W.2d 775, 778 (Tex.Crim.App. 1983) (State has not exercised diligence where it *knows* where the defendant is and fails to arrest him). Appellant's first ground of error is accordingly overruled.

In his second ground of error, appellant contends the trial court erred in admitting his judicial confession as evidence of an extraneous offense. Appellant argues that the admission of the extraneous offense into evidence deprived him of the right to be tried for the offense in the indictment, rather than for a collateral crime or for criminal behavior in general.

During the guilt-innocence phase of the trial, the State introduced a certified copy of a document from appellant's kidnapping trial entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession." This document was read to the jury and included the following:

> " ... I Calvin Louis Miguez ... on or about December the 4th of 1981 did then and there unlawfully, intentionally and knowingly restrain Lynn Renee Mau ... by secreting and holding the complainant in a place where she was not likely to be found ... with intent to inflict bodily injury on the complainant."

All references to appellant's conviction for aggravated kidnapping as well as references to any other criminal convictions were excised from the document. At trial, the State successfully argued the document was admissible as it was "a judicial confession and would tend to connect the defendant with this crime, specifically, by putting him in the presence of the victim on the night that she disappeared ..." The State also submitted that it was offering it to prove the corpus delecti of the crime.

■ We find the trial court did not err by admitting evidence of an extraneous offense. First, it is well settled that a defendant's testimony or judicial confession at a former trial may be used against him at a subsequent trial if the evidence is pertinent upon the present inquiry. *Chavez v. State*, 508 S.W.2d 384 (Tex.Crim. App.1974). Secondly, and perhaps more importantly, the aggravated kidnapping offense confessed to by appellant is *not* extraneous to the murder but is res gestae of the offense. Where an offense is one continuous transaction and another offense is part of the primary offense or closely interwoven with the primary offense, proof of the facts relating to the transaction or other offense is proper as part of the res gestae or context of the offense charged. *Brown v. State*, 696 S.W.2d 913 (Tex.Crim. App.1985).

Finally, assuming arguendo that the kidnapping is extraneous to the murder, we find that the evidence of the kidnapping is both a relevant and material issue at least insofar as identity of the victim is concerned and that its relevancy far outweighs any potential prejudicial effect. *McKay v. State*, 707 S.W.2d 23 (Tex.Crim.App.1985). Appellant's second ground of error is overruled.

In his third ground of error, appellant challenges the sufficiency of the accomplice corroboration. Appellant states in his brief that the trial court charged the jury that Hill was an accomplice as a matter of law and that "appellant could not be convicted without corroboration of Hill's testimony." Tex.Code Crim.Proc.Ann. art. 38.-

14 (Vernon 1979). Appellant then argues that the testimony of the other nine (9) State witnesses *fails* to corroborate Hill's testimony. The State has correctly pointed out, however, that the trial court did not charge the jury that Hill was an accomplice as a matter of law but rather let the jury decide if Hill was an accomplice in fact. Although appellant has not correctly raised his complaint, in the interest of justice we will address whether the trial court erred in failing to charge the jury that Hill was an accomplice witness as a matter of law.

An accomplice witness is someone who has participated with someone else, before, during or after the commission of a crime. *Harris v. State*, 645 S.W.2d 447 (Tex.Crim. App.1983); *Castillo v. State*, 711 S.W.2d 118 (Tex.App.–Houston [14th Dist.] 1986, no pet. hist.). If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law. *Carrillo v. State*, 591 S.W.2d 876 (Tex. Crim.App.1979). Moreover, a witness is not an accomplice witness merely because he knew of the offense and did not disclose, or even concealed it. *Kunkle v. State*, No. 69,501 (Tex.Crim.App.1986) (not yet reported). If there is doubt whether a witness is an accomplice witness, the court may submit the issue to the jury. *Kunkle, supra.*

■ We find the evidence does not support the conclusion that Hill was an accomplice witness as a matter of law. Although Hill was present at the scene of the murder, he did nothing to assist appellant in the commission of the offense. Hill's involvement in the murder of Lynn Renee Mau, at worst, makes him an accessory after the fact. An accessory after the fact may not be charged as a party to the principal offense.[1] *Easter v. State*, 536 S.W.2d 223 (Tex.Crim.App.1976). *Accord Emmett v. State*, 654 S.W.2d 48 (Tex.App.– Dallas 1983, no pet.). Appellant's third ground of error is overruled.

In his final ground of error, appellant contends the evidence is insufficient to sustain the conviction because the State failed to prove the corpus delecti. The corpus delecti in a murder prosecution includes two elements: (1) the body of the deceased must have been found and identified; (2) the death of the deceased must be shown to have been caused by the criminal act of another. *Penry v. State*, 691 S.W.2d 636 (Tex.Crim.App.1985).

■ Because of the time-gap between commission of the offense and recovery of the body, the identity of the deceased had to be proved by circumstantial evidence. Evidence of the deceased's identity includes Hill's testimony that appellant called the deceased "Renee". Hill was unable to identify the deceased from a photo spread. The Assistant Harris County Medical Examiner could give but a bare description of the badly decomposed body. Mary Mise, an expert forensic composite artist, made a sculpture from the deceased's skull and independent information provided by the Medical Examiner and the Harris County District Attorney's office. The deceased's son testified that Ms. Mise's sculpture looked like his mother except for the nose and difference in hair length. The son also testified that he had last seen his mother on December 4, 1981, at 7:00 p.m. Finally, there is appellant's judicial confession that he kidnapped Lynn Renee Mau on December 4, 1981 with the intent to inflict bodily harm.

Although we find no Texas cases reviewing identification through use of a reconstructed skull, we hold that the cumulative evidence presented in this case sufficiently establishes the identity of the deceased.

■ We also find sufficient evidence that the appellant caused the death of Lynn Renee Mau. The Assistant Medical Examiner testified that the cause of death was "multiple trauma by blunt force." Ronnie Hill testified that appellant and his girl-

---

1. We note that even assuming Hill was an accomplice witness, as a matter of law, appellant's judicial confession as to the facts of the kidnap- ping of the deceased sufficiently corroborates Hill's testimony.

friend repeatedly beat the deceased with their hands, kicked her with their feet (appellant was wearing motorcycle boots), bent her limbs the wrong way and forcibly inserted a stick in her vagina. Hill further testified that the deceased was badly bruised, her face severely beaten and disfigured, and that she slipped in and out of consciousness before dying in the early morning hours.

Appellant's fourth ground of error is overruled and the judgment of the trial court is affirmed.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the other members of the panel, I would like to record my respectful dissent.

Appellant, Calvin Louis Miguez, appeals from a judgment of conviction for the offense of murder. Appellant pleaded not guilty. The jury found him guilty and the Court assessed his punishment at thirty (30) years in the Texas Department of Corrections. I would reverse and order the trial court to dismiss prosecution of this cause.

In his first ground of error appellant asserts the trial court erred in failing to dismiss the indictment for violation of the Speedy Trial Act. Tex.Code Crim.Proc. Ann. art. 32A.02 (Vernon Supp.1986). I agree.

The record reflects the alleged offense of murder occurred on December 4, 1981, and the complainant was Lynn Renee Mau. On January 21, 1982, appellant was indicted in Harris County for the offense of aggravated kidnapping of Lynn Renee Mau in Cause No. 348735. On March 16, 1982, appellant pled guilty to that offense and was sentenced to five (5) years in the Texas Department of Corrections. Appellant was imprisoned in the Texas prison system until his release on parole on July 31, 1984.

In March 1984, Ronnie Hill contacted the police. Both the Houston Police Department and the Harris County Sheriff's Departments investigated a shallow grave at 13018 Garrett Road in Harris County which

Hill showed them and stated a girl by the name of "Renee" was buried there. The grave was located in Ronnie Hill's yard. After interviewing Ronnie Hill and further investigation the Harris County law enforcement officials learned that appellant was one of three suspects in the beating death of Lynn Renee Mau. Hill testified at trial, that he was present when Renee was beaten by appellant and the two other suspects at his house in December of 1981. Renee died the night she was brought to Hill's house and she was buried in his yard with his help. He waited until March, 1984, to report this murder to the police because he was scared of retaliation by appellant.

On July 30, 1984, appellant was indicted for the murder of Lynn Renee Mau, the offense on which this appeal is based. The following day, on July 31, 1984, appellant was released from prison on parole. Although appellant kept all appointments with his parole office, he was not arrested until January 18, 1985, over five (5) months after his indictment on the murder charge.

At the May 8, 1985 hearing on appellant's motion to set aside the indictment, the State announced ready and that it had been "ready for trial on each and every court appearance."

The Speedy Trial Act provides in pertinent part:

Section 1. A court shall grant a motion to set aside an indictment, ... if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

Sec. 2(a) [A] criminal action commences for the purpose of this article when an indictment, ... against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event, the criminal action commences when he is arrested.

Sec. 4. In computing the time in which the state must be ready for trial, the following periods shall be excluded;

(4) a period of delay resulting from the absence of the defendant because his location is unknown, and;

(A) he is attempting to avoid apprehension or prosecution; or

(B) the state has been unable to determine his location by due diligence;

TEX.CODE OF CRIMINAL PRO.ANN. art. 32A.02, §§ 1, 2(a), 4(4)(A) & (B) (Vernon Supp.1986).

Article 32A.02 section 1 (1) requires a court to grant a motion to set aside an indictment if the State is not ready for trial within 120 days of the commencement of a criminal action if the defendant is accused of a felony. The commencement of the criminal action in this case was the date the indictment was filed in court, July 30, 1984.

Section 4 of the same article provides that in computing the time by which the State must be ready for trial, there shall be excluded a period of delay resulting from the absence of the defendant because his location is unknown and the State has been unable to determine his location by due diligence. Therefore, the relevant inquiry is whether during the five months following the indictment and appellant's arrest, the State diligently attempted to locate appellant.

When the State's announcement of ready is made after the period required by statute has expired, the State must demonstrate that it is ready at the time of the announcement *and* has been ready at all times during the statutory period, or else it must demonstrate or establish that sufficient periods of time are excludable under the Act. *Apple v. State,* 647 S.W.2d 290 (Tex.Crim.App.1983); *Smith v. State,* 659 S.W.2d 828, 830 (Tex.Crim.App.1983).

Securing the defendant's presence is a readiness burden which falls upon the State under the Speedy Trial Act. *Lyles v. State,* 653 S.W.2d 775, 778 (Tex.Crim.App. 1983). The failure of the State to have appellant in custody, effectively rebuts the state's announcement of ready within the 120 day period. The State did not arrest and have appellant in custody, for trial until January 18, 1985. While the State may have been ready for trial from an evidentiary standpoint, it could not have been ready for trial under article 32A.02 without the presence of appellant. *Stokes v. State,* 666 S.W.2d 493, 494 (Tex.Crim. App.1983); *Newton v. State,* 641 S.W.2d 530, 531 (Tex.Crim.App.1982).

In *Lyles v. State,* the Court held that a negligent mistake in the sheriff's office did not excuse the state's failure to secure the defendant's presence, Id. 778, 779.

The State contends the cause of delay in the apprehension and arrest of appellant was the result of an erroneous spelling of his name on the indictment as well as other bureaucratic snags, and not because of a lack of diligence. I do not agree.

At the hearing on appellant's motion to set aside the indictment, the State presented evidence from the clerk of the 174th District Court that appellant's last name was incorrectly spelled M–I–Q–U–E–Z, instead of M–I–G–U–E–Z, on the indictment. The State claims that this error caused a delay in the appellant's apprehension and arrest. An indictment is the State's pleadings and is prepared by the State and any mistake in the indictment resulted from a lack of due diligence on their part. The record further indicates the State was aware appellant was a suspect in this murder in March of 1984, when Ronnie Hill informed the Harris County Sheriff's Department of appellant's involvement. The State was also aware appellant was under a five (5) year sentence for aggravated kidnapping of the same complainant, and would be imprisoned in the Texas Department of Corrections or on parole under supervision of the Texas Board of Pardons and Paroles. If proper diligence were exercised by the State, it could have obtained appellant's release date from the Texas Department of Corrections prior to his release from prison on July 31, 1984. If this had been done he would have been arrested before his release from prison.

Harris County Deputy Sheriff C.W. Dozier testified that on August 7, 1984, he attempted to arrest appellant on the warrant for this case. He went to 13018 Garrett Road, the address where appellant lived sometime prior to going to prison, and also the address given by the State on the warrant. Dozier discovered the house at 13018 Garrett Road had been destroyed. After talking to several persons who lived on Garrett Road, Dozier did not find anyone who knew appellant or his location. Deputy Dozier testified that he then considered this location a dead end. He returned the warrant to his office and entered appellant's name into the Crime Computer System. Detective Roger Willis with the criminal warrant division of the Harris County Sheriff's Office testified that on August 29, 1984, and September 1, 1984, attempts were made to serve the warrant on appellant at 1422 Yale Street, Houston, Texas, but no one answered the door. This was an address for Karen Kay Kopp, a codefendant, and it was believed by the Sheriff's Department that appellant might be living with her. Another attempt was made on December 24, 1984, at 157 Keel Street, Houston, Texas, but the apartment at this location was vacant. Detective Willis further testified he gave a copy of the warrant to the Houston Police Department.

This series of wild goose chases further proves the lack of due diligence on the part of the State. If the State has used due diligence it would have located appellant in the Texas Department of Corrections prior to his release on parole. After his release on parole, July 31, 1984, the State with due diligence, would have located him through the Texas Department of Corrections and the Texas Parole Board which knew where he lived and where he worked. In fact the record reflects that when appellant was arrested on January 18, 1985, it was in the office of his parole officer, Jim Lahonis. Mr. Lahonis testified he called appellant at work to come to his office and when he arrived appellant was arrested.

I would find the State failed to show due diligence to determine appellant's location and effect his arrest. Because of the failure of the State to comply with the Speedy Trial Act, I would reverse the judgment of the trial court and order prosecution dismissed.

Lastly, the State asserts that Article 32A.02 is unconstitutional because its caption violates Article III, Section 35 of the Texas Constitution. The State's claim is that the caption is not so specific as to give fair notice as to the subject and contents of the bill. I disagree with the State's contention and agree with the decision handed down by this court in *Bedford v. State,* 703 S.W.2d 775 (Tex.App.—Houston [14th Dist.] 1985, no pet.); *Beddoe v. State,* 681 S.W.2d 114 (Tex.App.—Houston [14th dist.] 1984, pet. pending) holding that the caption of the Texas Speedy Trial Act is *not* constitutionally defective.