**Louis Arthur PIERCE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 12–86–0152–CR.**

Court of Appeals of Texas,
Tyler.

May 29, 1987.

Gregory Neeley, Longview, for appellant.

David Brabham, Longview, for appellee.

COLLEY, Justice.

Louis Arthur Pierce was convicted by a jury of aggravated sexual assault of a male child.[1] The jury assessed punishment at eighty years' confinement. We affirm.

Pierce presents five points of error. First, he argues the court erred in refusing

---

1. Under Tex.Penal Code Ann. §§ 22.-011(a)(2)(C), 22.021(a)(5) (Vernon Supp.1987). All references made to sections in this opinion are to the Texas Penal Code (Vernon Supp.1987) unless otherwise indicated.

to discharge him and dismiss the indictment under the Speedy Trial Act.[2] Second, Pierce contends the trial court erred in failing to suppress the victim's in-court identification of him and the pretrial identification made by the victim from a six-picture photographic spread. Third, he claims the indictment is fundamentally defective. By his fourth point Pierce challenges the sufficiency of the evidence, and fifth, he alleges trial error in admitting what he terms "unproven prior convictions" contained in a pen packet introduced at the punishment phase of his trial.

The record reveals the following facts, circumstances and events pertinent to the issues before us. On September 24, 1985, the eleven-year-old victim was forced into a Ford van at gun point by an assailant who then drove the van to a secluded site in Gregg County. The abduction took place at about 4:00 p.m. The assailant parked the van, and instructed the child to get on a bed in the back of the van. The assailant then removed his pants and the victim's pants, thus exposing their "private parts." The child testified that he was forced to lie on his stomach, and that the man "got on top of [him] and started kissing [him]" on his neck, and spread his legs apart. The child related that the man then turned him over on his back and began kissing him on the mouth and inserted his penis between the victim's legs. The child testified that the man's penis made contact with his "privates." The attacker then returned the child to Longview and freed him. The child made a positive in-court identification of Pierce as the person who assaulted him, stating that his identification was based on his viewing Pierce for the approximately one hour during which the offense was committed. The reliability of the child's identification testimony is further bolstered by his detailed and correct description of the van, its interior and contents.

On September 26, 1985, Longview police officers, armed with a detailed description of the van given by the child victim, spotted a van fitting the description on a lounge parking lot in Longview. The officers approached the van and its occupants who turned out to be Pierce and one of his brothers. Pierce and his brother at the officer's request signed a written consent for a search of the van by the officers. Officer Randall Reiger, one of the investigating officers, testified that from his inspection of the vehicle, it became apparent that the van was the one used by the child's assailant, and decided to photograph the interior. He called a police photographer who came to the scene and made photographs. Reiger testified that he then decided to request Pierce and his brother to come to the police station where their pictures could be made and fingerprints taken. He asked Pierce and his brother if they would voluntarily go to the Longview Police Department for that purpose and they agreed. Reiger testified further that Pierce drove the van to the police station followed by the officers in their vehicles. He related that on numerous occasions he advised Pierce that he could leave the police station anytime he desired. After the photographing and fingerprinting were accomplished, Pierce and his brother left the police station. As Pierce was leaving, the officers advised him that a warrant for his arrest could possibly be forthcoming, and that he should not leave the area. Pierce gave the officers his address on Texas Street in Longview at their request. The next day Reiger made a photographic spread consisting of six pictures, including one of Pierce, and on the morning of September 27, exhibited the pictorial spread to the victim, who identified Pierce as his attacker. Reiger secured a warrant for Pierce's arrest. He and other officers went to the Texas Street address given them by Pierce, which turned out to be the home of Pierce's mother, but Pierce was not present. Thereafter, the police officers went to another residence in Longview belonging to a friend of the Pierce family, where Pierce's van had been reported to have been seen on several occasions prior to September 27, 1985. Pierce was not found there. Reiger testified that both

**2.** Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Supp.1987). All references to articles herein-

after made are to the Tex.Code Crim.Proc.Ann. (Vernon Supp.1987) unless otherwise indicated.

locations were placed under surveillance for over a month, but that Pierce never came to the locations. A confidential tip enabled the police to effect Pierce's arrest for the offense on November 7, 1985. On February 12, 1986, an indictment against Pierce was returned and filed, charging Pierce with aggravated kidnapping and aggravated sexual assault of the child.

## SPEEDY TRIAL ACT

Pierce contends that the court erred in failing to sustain his pretrial motion to set aside the indictment and discharge[3] him pursuant to the terms of the Speedy Trial Act. He makes two arguments. First, he claims that the State failed to announce ready for trial at any time prior to April 23, 1986, the date of trial. The record does not support this claim. The State made a written announcement of "ready" on February 13, 1986. Alternatively, Pierce argues that the criminal action against him for this offense was commenced on September 26, 1985, when he claims he was arrested and incarcerated by Longview police officers. If this assertion is true, we must sustain the point unless at least twenty days between September 26, 1985, and November 7, 1985, are excludable under section 4(4)(A, B) of the Speedy Trial Act.

■ Tex.Code Crim.Proc.Ann. art. 15.-22 (Vernon 1977) provides in part, "[a] person is arrested when he has been ... taken into custody by an ... officer or person arresting without a warrant." An arrest is complete when a person's liberty of movement is restricted or restrained. *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Cr.App. 1973); *Brewster v. State*, 606 S.W.2d 325, 327 n. 6 (Tex.Cr.App.1980). The trial court considered the testimony of several police officers as well as the testimony of Pierce respecting the events of September 26, 1985. Pierce in his testimony[4] did not state that his freedom of motion was physically restrained or restricted, but did testify that the police verbally ordered him into

the police station after he informed them that he did not wish to go. He also testified he submitted his fingerprints to the police officers at the police station because he "assumed [he] was under arrest." The officers involved in the fingerprinting of Pierce contradicted Pierce's testimony about orders given to Pierce to enter the station, and testified that Pierce was told on several occasions that he could leave the police station any time he wished. In fact, when his photograph was made and his prints taken, Pierce left without hindrance. The record discloses that Pierce was never questioned about the offense; and that no felony complaint had been filed against him on September 26, 1985, authorizing a warrant for his arrest. When the trial judge denied the motion to set aside the indictment, he impliedly found that Pierce had not been restrained or restricted in his freedom of movement. We conclude that the evidence supports that conclusion. Hence, we hold that under the Speedy Trial Act, the criminal action against Pierce was not commenced until his actual arrest on November 7, 1985. Furthermore, assuming without deciding, that Pierce was under arrest on September 26, 1985, for the offense involved, we are of the opinion that the period of time from September 27, 1985, to November 7, 1985, was excludable[5] under the terms of section 4(4)(A, B) of the Speedy Trial Act. The point is overruled.

## IDENTIFICATION ISSUES

■ In his second point of error Pierce asserts that the trial court erred in failing to grant his pretrial motion to suppress the child's testimony identifying him in court, and out of court by means of a photographic spread. The grounds of the suppression motion in essence alleged age and clothing discrepancies of Pierce and the five other white males depicted in the photographs; asserted that most, if not all, of the other males appeared to be quite younger than

3. Pursuant to art. 28.061.

4. At a pretrial hearing.

5. Further assuming that the delay in effecting Pierce's arrest was chargable to the prosecutorial officers. *Cf. Lyles v. State*, 653 S.W.2d 775, 777 (Tex.Cr.App.1983).

he; that he was the only person wearing what he termed to be an "un-collared shirt"; and that the line-up pictures of the other five males shown were taken with a height chart in the background, showing that the other persons were not tall individuals; and that since the victim described his assailant as tall and skinny, such facts conduced to the identification of Pierce by the victim. Pierce contends that the out-of-court identification procedures were, therefore, impermissibly suggestive and created a substantial likelihood of irreparable identification. We disagree. The eleven-year-old victim was in close physical contact with his attacker for more than an hour in the interior of the van in broad daylight. His in-court identification of Pierce was unequivocal, and was based on his close-up observation of Pierce before, during, and after the sexual assault. Based on the totality of the circumstances and events shown by this record, we conclude that the in-court identification by the victim was based on the child's experience and forced association with Pierce on September 24, 1985, and thus a sufficient independent origin for the in-court identification. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Cr.App. 1983).

■ Pierce also makes the contention that reversible error was committed when the trial court permitted the child to testify to the pretrial identification of Pierce in the State's case in chief. This contention is wholly without merit. *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965); *Hills v. State*, 524 S.W.2d 692 (Tex.Cr.App.1975). Additionally, Pierce complains that Officer Reiger was erroneously permitted to testify to the victim's pretrial identification of him. The record discloses that Pierce made no objection to Reiger's testimony, and thus the error is not preserved for review. Moreover, because of the victim's positive in-court identification of Pierce, and his testimony that he identified Pierce from the photographic spread, any error in admitting Reiger's testimony was harmless

beyond a reasonable doubt. *Davis v. State*, 636 S.W.2d 197, 198 (Tex.Cr.App. 1982). The point is overruled.

## INDICTMENT

■ Pierce claims the indictment is defective because it contains no allegation that the assault upon the child victim was made with intent to "arouse or gratify the sexual desire of any person." [6] This contention is grounded on the definition of "Sexual Contact" contained in section 21.-01(2), reading, " 'Sexual contact' means any touching of ... any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." The instant indictment alleges, in pertinent part, that Pierce "did then and there intentionally and knowingly cause the sexual organ of [the victim] a child who was then and there younger than fourteen years of age ... to contact the sexual organ of the defendant...." Neither Pierce nor the State cites any controlling case authority [7] on the point, and we find none. However, it is clear that the definition of "Sexual Contact" set forth in section 21.01 is limited to the sexual offenses defined in Chapter 21 of Title 5 of the Texas Penal Code. Section 21.01 states, inter alia, *"In this chapter:* ... Sexual contact means...." (Emphasis added.) The elements of the offense of aggravated sexual assault applicable here are: a person commits an offense if the person (1) intentionally or knowingly (2) causes the sexual organ of a child to contact the sexual organ of another person including the actor, and (3) the child is younger than fourteen years of age. Sections 22.011(a)(2)(C), 22.021(a)(5). The indictment correctly alleges the offense of aggravated sexual assault of a child under the last cited sections. The point of error is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ Pierce claims the evidence is insufficient to support his conviction. The sole basis of the claim is, that there is no evi-

---

6. An element of the offense of indecency with a child under section 21.11(a)(1).

7. *Honc v. State*, 698 S.W.2d 218, 221 (Tex.App.— Corpus Christi 1985, pet. granted), cited by the State, provides dictum with which we agree.

dence to establish that Pierce had an intent at the time of the commission of the offense to arouse or gratify either his or the victim's sexual desire. Our review of the record reveals that the child victim testified positively that his sexual organ was contacted by the sexual organ of Pierce. Whether or not Pierce, at the time of the commission of the offense, had the specific intent of arousing or gratifying the sexual desire of either he or the child is totally immaterial because such intent is not an essential element of the offense of aggravated sexual assault of a child. The point is overruled.

## ADMISSIBILITY OF PRIOR CONVICTIONS

■ Prior to the punishment phase of the trial, the trial court conducted a hearing, out of the presence of the jury, to determine the admissibility of State's exhibit number fifteen. The exhibit contained copies of judgments and sentences in several misdemeanor and felony convictions in the courts of North Carolina of Louis Arthur Pierce, Louis A. Pierce, and Louis Pierce. The exhibit is attested by Hazel W. Keith, "Supervisor of Records of the North Carolina Department of Corrections...." as legal custodian of the records of that penal institution. The attestation recites, inter alia, that the "photographs, fingerprints and commitments attached [thereto] are copies of the record of Louis Arthur Pierce, P4 185–488–11060–CA...." The exhibit contains one photograph[8] of Pierce and one complete set of fingerprints. The page containing the prints is stamped "Master." Each of the several judgments and commitments (sentences) bears a certificate signed by Hazel W. Keith on March 5, 1986. The formal attestation by Keith also is dated March 5, 1986.

Pierce objected to the admission of all but one of the prior convictions included in the exhibit on the ground that the State did not prove that appellant Louis Arthur Pierce was the same person as the Louis Arthur Pierce who was convicted of the prior offenses. In form, his objection was

even more specific, it was "[o]ur objection would be that we object to the introduction of all judgment [sic] and sentences where there is not a corresponding fingerprint page for the reason that there's no way to prove outside Court testimony that this is one and the same [sic]." At the punishment phase the State produced a fingerprint expert who testified that the prints included in the exhibit matched Pierce's fingerprints taken by the expert shortly before the trial of the punishment phase of the case. From a reading of the entire exhibit, we conclude that the fingerprint records included therein, as well as the photograph card and label, are referable to each conviction shown by the exhibit. Hence the contents of the exhibit constitute sufficient evidence to support the trial court's implied conclusion that Louis Arthur Pierce on trial before him was the same person convicted of all the offenses set forth in the exhibit. *Cole v. State*, 484 S.W.2d 779, 784 (Tex.Cr.App.1972); *Gollin v. State*, 554 S.W.2d 683, 686–687 (Tex.Cr. App.1977); *Cf. Littles v. State*, 726 S.W.2d 26, 32 (Tex.Cr.App.1987) (opinion on motion for rehearing). The point of error is overruled.

The judgment of the trial court is affirmed.

---

8. The photograph contains a label setting forth a full and complete physical description of Pierce, and his date of birth.